UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
KOON CHUN HING KEE SOY & SAUCE FACTORY, LTD,

        Plaintiff,                  CASE NO.:   1:19-cv-02026 (FB)(CLP)

      v.

JESSICA YANG a/k/a YANG XIAO GENG a/k/a
JESSICA QIAO, YI Q. ZHAN a/k/a YI QIANG ZHAN
 a/k/a JIMMY ZHAN, STAR MARK MANAGEMENT, INC.,
GREAT MARK CORPORATION, GREAT KINGSLAND, INC.,
G.K EXOTIC, INC., EZ FANTASY, INC.,
BEAUTY LOVER EXPRESS, INC.,
JOHNSON STORAGE, INC., ZME GALAXY CORP., J & J
GLOBAL USA, INC.,  and EDMUND ZHAN,

        Defendants.
-----------------------------------------------------------------------------X

## COMPLAINT

Plaintiff, KOON CHUN HING KEE SOY & SAUCE FACTORY, LTD   (hereinafter "Plaintiff" or "Koon Chun" ), sues Defendants JESSICA YANG a/k/a YANG XIAO GENG a/k/a JESSICA QIAO, YI Q. ZHAN a/k/a YI QIANG ZHAN a/k/a JIMMY ZHAN, STAR MARK MANAGEMENT, INC., GREAT MARK CORPORATION, GREAT KINGSLAND, INC., G.K EXOTIC, INC., EZ FANTASY, INC.,  BEAUTY LOVER EXPRESS, INC., and, JOHNSON STORAGE, INC. (hereinafter "Defendants"), for injunctive relief, money damages, declaratory judgment, fees and costs, including but not limited to disbursements, court expenses and attorneys fees, and alleges:

## JURISDICTION AND VENUE

1.     This is an action for declaratory judgement, injunctive relief, and money damages, premised upon piercing the corporate veil of many companies which were opened, operated, fleeced, and in some instances closed to secret, frustrate, and impede the plaintiff's enforcement

of the money judgment obtained against co-defendants, YI Q. ZHAN a/k/a YI QIANG ZHAN a/k/a JIMMY ZHAN, STAR MARK MANAGEMENT, INC., and GREAT MARK.

2.      This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. Code § 1332, diversity of citizenship, and has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

3.      The amount in controversy exceeds the threshold of $75,000, exclusive of interest and costs.

4.      Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 in that the transaction or occurrence giving rise to this lawsuit occurred in the Eastern District of New York.

5.      Venue is proper in the Eastern District of New York in that the Subject Property is located in the State of New York, County of Queens.

## **THE PARTIES**

6.      At all times material hereto, Plaintiff, KOON CHUN is a company organized under the Laws of Hong Kong.

7.      Co-defendant, Yi Q. ZHAN a/k/a YI QIANG ZHAN a/k/a JIMMY ZHAN is a natural person residing in Queens County, City and State of New York (herfeinafter referred to as "ZHAN").

8.      Co-defendant, JESSICA YANG a/k/a YANG XIAO GENG a/k/a JESSICA QIAO, is a natural person residing in Queens County, City and State of New York (hereinafter "YANG").

9.      Co-defendant, GREAT MARK CORPORATION is a domestic corporation duly formed on January 16, 2003, with a principal place of business in Queens County, City and State of New York (hereinafter referred to as "GREAT MARK").

10.     Co-defendant, STAR MARK MANAGEMENT, INC. is an inactive domestic corporation formed on December 12, 2000, and was dissolved by Dissolution on June 3, 2005, and had at all times previously conducted its business in Queens County, City and State of New York (hereinafter referred to as "STAR MARK").

11.     Co-defendant, G.K EXOTIC, INC. is an inactive domestic corporation duly formed on September 5, 2006, with a principal place of business in Queens County, City and State of New York, which was dissolved on November 14, 2014 (hereinafter referred to as "G.K EXOTIC").

12.     Co-defendant, GREAT KINGSLAND, INC., is an inactive domestic corporation formed on January16, 2003, and was dissolved by Proclamation on January 27, 2010, and had at all times previously conducted its business in Queens County, City and State of New York (hereinafter referred to as "GREAT KINGSLAND").

13.     Co-defendant, EZ FANTASY, INC., is an inactive domestic corporation that was formed on March 27, 2006, and was dissolved by Proclamation on January 25, 2012, and had at all times previously conducted its business in Queens County, City and State of New York (hereinafter referred to as "EZ FANTASY").

14.     Co-defendant, BEAUTY LOVER EXPRESS, INC., is an inactive domestic corporation that was formed on Sepember 14, 2004, and was dissolved by Dissolution on December 24, 2008, and had at all times previously conducted its business in Queens County, City and State of New York (hereinafter referred to as "BEAUTY LOVER").

15.     Co-defendant, JOHNSON STORAGE INC., is an inactive domestic corporation that was formed on October 5, 2006, and was dissolved by Proclamation on July 27, 2011, and had at all times previously conducted its business in Kings County, City and State of New York (hereinafter referred to as "STORAGE INC.").

16.     ZME GALAXY CORP. a domestic corporation that was formed on February 18, 2014, and has its principal place of business in Queens County, City and State of New York (hereinafter referred to as "ZME").

17.      J & J GLOBAL USA, INC., an inactive domestic corporation that was formed on October 29, 2007, and was dissolved by Proclamation on July 27, 2011, and had at all times previously conducted its business in Queens County, City and State of New York (hereinafter referred to as "J & J").

18.      EDMUND ZHAN is a natural person residing in Queens County, City and State of New York (hereinafter "E. ZHAN").

19.     The law permits actions to enforce the liabilities of the the inactive corporations which existed at the time of their dissolution irrespective of the manner in which the dissolution was achieved or the nature of the existing liability.

20.     Each and every corporate co-defendant that is inactive had either YANG and/or ZHAN its owner, or the equitable owner, at the time of its dissolution.

21.     Each and every corporate co-defendant that is inactive had actual and/or contructive knowledge of KOON CHUN's claim and that each entity at that time had an existing liability to KOON CHUN.

## FACTS COMMON TO ALL CLAIMS

22.     At all relevant times hereto, YANG  is the wife/spouse of ZHAN.

23.     KOON CHUN is a judgment creditor of  judgment debtor-defendants, STAR MARK, GREAT MARK, and ZHAN (hereinafter "judgment debtor defendants").

24.     Judgment was entered against the debtor-defendants on January 8, 2010 in the amount of $989,426.13 plus interest, arising out of litgation under E.D.N.Y. Case No.: 04-CV-2993 (SMG)(hereinafter referred to as ("Prior Action").

25.     The Prior Action was commenced by KOON CHUN on June 3, 2004 under seal seeking an Ex Parte Seizure Order, alleging *inter alia* that the judgment debtor-defendants were selling counterfeit goods in violation of  KOON CHUN's rights.

26.     On or about June 13, 2004, KOON CHUN executed on the Ex Parte Seizure Order at property used and/or leased by STAR MARK, seizing goods and some business records.

27.     On or about June 13, 2004,  while the Ex Parte Seizure Oder was being executed, attorneys for STAR MARK contacted  KOON CHUN's legal counsel by telephone.

28.     As of June 13, 2004, debtor-defendants had actual knowledge that KOON CHUN was seeking injunctive relief and money damages over and against the debtor-defendants.

29.     As of June 13, 2004, YANG had actual knowledge that KOON CHUN was seeking injunctive relief and money damages over and against the debtor-defendants.

30.     After the seized records were reviewed, the identity of YI Q. ZHAN a/k/a YI QIANG ZHAN a/k/a JIMMY ZHAN, was learned.

31.     On December 29, 2004 the Complaint in the Prior Action was amended to name ZHAN as co-defendant.

32.     On May 1, 2009, after a five (5) day bench trial, The Court issued a Memorandum and Order on the trial in favor of KOON CHUN.

33.     On December 23, 2009 a Final Judgment was Ordered, and on January 8, 2010 the Judgment was filed in the Office of the Clerk.

34.     As of the date hereof, no monies have been received, collected, or garnished with respect to the Judgment.

35.     The Judgment is still valid and in full force and effect.

**YANG AND ZHAN'S HOME AND CREDIT LINE(S)**

36.     By deed dated October 5, 2001, YANG and ZHAN became the owners in fee simple absolute of the real property known as: 67-49 166th Street, Fresh Meadows, Queens County, City and State of New York, 11365, known on the tax maps as Queens Block 6920 Lot 11 (Entire Lot) (hereinafter referred to as the "Yang & Zhan Property ").

37.     The Yang & Zhan Property  is a single family home.

38.     Upon information and belief, YANG and/or ZHAN have at all relevant times provided the money to maintain, operate, and pay the necessary expenses for the Yang & Zhan Property .

39.     Upon information and belief, corporate or company entities owned or otherwise controlled by YANG and/or ZHAN, have at all relevant times provided the money to maintain, operate, and pay the necessary expenses for the Yang & Zhan Property .

40.     The Yang & Zhan Property  is still owned by YANG and ZHAN.

41.     There is an Order in effect, issued by the Hon. Magistrate Judge Gold in the Prior Action which has restrained and forbidden ZHAN from *inter alia* moving, concealing, wasting or in any way making, attempt to make or suffer any sale, assignment or transfer of the Yang & Zhan Property .

42.     ZHAN and YANG obtained a mortgage from Washington Mutual Bank, FA on October 5, 2001 (recorded in office of the City of New York Register January 10, 2002), against the Yang & Zhan Property , which secured a $412,500 Note (hereinafter "WAMU Mortgage 1").

6

43.     On September 2, 2004, not more than three (3) months after the seizure in the Prior Action was conducted, ZHAN and YANG obtained a mortgage from Washington Mutual Bank, FZ (recorded in office of the City of New York Register February 4, 2005), agains the Yang & Zhan Property , which secured a $10,934.56 Note (hereinafter "WAMU Mortgage 2").

44.     On September 2, 2004, not more than three (3) months after the seizure in the Prior Action was conducted,  ZHAN and YANG consolidated the mortgage from Washington Mutual Bank, FZ (recorded in office of the City of New York Register May 12, 2005), consolidating Mortgage 1 and Mortgage 2 against to create a single lien against the Yang & Zhan Property , in the principal sum of $410,000 (hereinafter referred to as "WAMU Consolidated Mortgage 1").

45.     On January 26, 2005, not more than twenty (20) months after the seizure in the Prior Action was conducted, ZHAN and YANG obtained a credit line mortgage from Chase Home Finance LLC (recorded in office of the City of New York Register March 3, 2005), agains the Yang & Zhan Property , which secured a credit line note not to exceed $212,700 (hereiafter referred to as "Chase Loan 1")

46.     On November 9, 2005, ZHAN and YANG obtained a credit line mortgage from Washington Mutual (recorded in office of the City of New York Register February 14, 2006), agains the Yang & Zhan Property , which secured a credit line note not to exceed $250,000 (hereinafter referred to as "WAMU November 2005 Credit Line.")

47.     On December 30, 2005, ZHAN and YANG obtained a satisfaction of mortgage from Chase Home Finance LLC (recorded in office of the City of New York Register January 18, 2006), with respect to Chase Loan 1.

48.     On August 2, 2007, ZHAN and YANG obtained a mortgage from Washington Mutual Bank, FA (recorded in office of the City of New York Register September 25, 2007), which

secured a new Note issued to ZHAN and YANG in the amount of $132,798.94 (hereinafter referred to as "WAMU Mortgage 3").

49.     On August 2, 2007, ZHAN and YANG consolidated a WAMU Mortgage 3 and WAMU Consolidated Mortgage 1, into a new consolidated mortgage form Washington Mutual Bank, FA (recorded in office of the City of New York Register September 25, 2007), securing an outstanding lien of $536,000. (hereinafter referred to as "WAMU Consolidated Mortgage 2").

50.     In late 2018,WAMU Consolidated Mortgage 1 was assigned to JP Morgan Chase Bank.

51.     WAMU Consolidated Mortgages 1 & 2, WAMU NOVEMBER 2005 CREDIT LINE, WAMU Mortgages 1, 2, and 3, as well as the Chase Loan 1, are referred to collectively herein as the "Washington Mutual Credit Line."

52.     ZHAN and YANG are both personally jointly and severally liable for the debt incurred with respect to the Washington Mutual Credit Line.

53.     At all relevant times ZHAN directed, authorized, acknowledged and otherwise a participant in drawing money in and out of the Washington Mutual Credit Line.

54.     At all relevant times YANG directed, authorized, acknowledged and otherwise a participant in drawing money in and out of the Washington Mutual Credit Line.

55.     At all relevant times hereto, ZHAN and YANG used their assets to pay the mortgages agains the the YANG Property.

<u>**RELATIONSHIPS IN AND TO BUSINESS AND ENTITES**</u>

<u>**STAR MARK MANAGEMENT, INC.**</u>

56.     STAR MARK was incorporated on December 21, 2000.

57.     STAR MARK conducted its business at a retail location: 136-15 41st Avenue, Flushing, NY 11355.

58.     STAR MARK conducted its phone reception and mail order business activities at 1101 Metropolitan Avenue, Brooklyn, NY 11211.

59.     STAR MARK's address for New York Department of State Service of Process was: 136-15 41 Avenue, Suite 56, Flushing, New York 11355.

60.     All STAR MARK books and records were maintained in the office at 1101 Metropolitan Avenue.

61.     STAR MARK was in the business of selling grocery store items, produce, and the like.

62.     ZHAN was a 50% shareholder of STAR MARK's issued and outstanding shares.

63.     ZHAN was an owner of shares in STAR MARK.

64.     YANG was a 100% owner of shares in STAR MARK.

65.     ZHAN was an officer of STAR MARK.

66.     YANG was an officer of STAR MARK.

67.     ZHAN is the putative owner of  STAR MARK.

68.     YANG is the putative owner  of STAR MARK.

69.     YANG dominated and controlled STAR MARK through her activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

70.     YANG made financial decisions with respect to STAR MARK.

71.     ZHAN dominated and controlled STAR MARK through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and inventory, filing of bank records and business records, drawing checks and funds from the company.

72.     ZHAN made financial decisions with respect to STAR MARK.

73.     ZHAN drew a salary from STAR MARK that was not more than $55,000 per year.

74.     STAR MARK's annual gross sales at all relevant times was between $1,500,000 and $2,00,000 per year.

75.     STAR MARK employees included but were not limited to: Mr. Huang; Mr. Paeng; David Zhang;  Sheng Li; Zui Tuan;  and Miao Huan Guan.

76.     STAR MARK changed its name to GREAT KINGSLAND in 2004.

77.     STAR MARK dissolved in June of 2005.

**GREAT KINGSLAND**

78.     GREAT KINGSLAND  was incorporated on January 16, 2003.

79.     GREAT KINGSLAND conducted the same exact business as STAR MARK.

80.     There were no changes in the day to day operations the moment that STAR MARK changed its name to GREAT KINGSLAND.  The Chinese name of STAR MARK, "家乐" (phonetically pronounced as "Jia Le") remained unchanged when the business was passed from STAR MARK to GREAT KINGSLAND.

81.     There were no changes in address that business operations were conducted the moment that STAR MARK changed its name to GREAT KINGSLAND.

82.     GREAT KINGSLAND conducted its business at a retail location: 136-15 41st Avenue, Flushing, NY 11355.

83.     GREAT KINGSLAND also conducted its business at 1101 Metropolitan Avenue, Brooklyn, NY 11211.

84.     There were no changes in the personnel of employees at the moment that STAR MARK changed its name to GREAT KINGSLAND.

85.     GREAT KINGSLAND employees included but were not limited to: Mr. Huang; Mr. Paeng;  David Zhang;  Sheng Li; Zui Tuan;  and Miao Huan Guan.

86.     Blue Ribbon was the firm that prepared the taxes for STAR MARK and GREAT KINGSLAND, and GREAT MARK.

87.     GREAT KINGSLAND used the same phone numbers as did STAR MARK.

88.     GREAT KINGSLAND's address for New York Department of State Service of Process was: the Yang & Zhan Property.

89.     ZHAN was an owner of shares in GREAT KINGSLAND.

90.     YANG was an owner of shares in GREAT KINGSLAND.

91.     ZHAN was an officer of GREAT KINGSLAND.

92.     YANG was an officer of GREAT KINGSLAND.

93.     ZHAN is the putative owner of GREAT KINGSLAND.

94.     YANG is the putative owner  of GREAT KINGSLAND.

95.     ZHAN dominated and controlled for GREAT KINGSLAND at the 1101 Metropolitan Avenue, Brooklyn, NY 11211 business location.

96.     YANG dominated and controlled GREAT KINGSLAND through her activities which included but were not limited to: supervising the staff schedules; collecting payments from

clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

97.     YANG made financial decisions with respect to GREAT KINGSLAND.

98.     ZHAN dominated and controlled GREAT KINGSLAND through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and inventory, filing of bank records and business records, drawing checks and funds from the company.

99.     ZHAN made financial decisions with respect to GREAT KINGSLAND.

100.     GREAT KINGSLAND obtained its own mailing address: 136-15 41st Avenue number 59, Flushing, NY 11355.

101.     GREAT KINGSLAND conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354- a location which was purchased in the name of YANG in 2005.

102.     YANG collected the mail at the PO Box.

103.     ZHAN collected the mail at the PO Box.

104.     GREAT KINGSLAND was in the business of selling adult toys, novelty items and lingerie.

105.     GREAT KINGSLAND was also in the business of renting or leasing storage/warehouse space to other entities.

106.     GREAT KINGSLAND was dissolved by proclamation on January 27, 2010.

**GREAT MARK**

107.     GREAT MARK was incorporated on January 16, 2003.

108.     GREAT MARK is an active corporation.

109.     GREAT MARK's address for Department of State Service of Process was Yang & Zhan Property .

110.     GREAT MARK conducted its business at 135-17 40th Road, Flushing, New York.

111.     GREAT MARK conducted its phone reception and mail order business activities at 1101 Metropolitan Avenue, Brooklyn, NY 11211.

112.     GREAT MARK conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354- a location which was purchased in the name of YANG in 2005.

113.     ZHAN is the sole 100% owner of the issued and outstanding shares in GREAT MARK

114.     YANG is the sole 100% owner of the issued and outstanding shares in GREAT MARK

115.     ZHAN is an owner of the issued and outstanding shares in GREAT MARK.

116.     YANG is an owner of the issued and outstanding shares in GREAT MARK.

117.     ZHAN was an officer of GREAT MARK.

118.     YANG was an officer of GREAT MARK.

119.     ZHAN is the putative owner of GREAT MARK.

120.     YANG is the putative owner  of GREAT MARK.

121.     GREAT MARK is in the business of dealing, selling, shipping, purchasing, and otherwise transacting in health products such as cosmetics, teas, eye creams.

122.      GREAT MARK is in the business of dealing, selling, shipping, purchasing, and otherwise transacting in and adult products/ adult toys.

123.    GREAT MARK is in the businesss of dealing, selling, shipping, purchasing CD's and DVD's.

124.    YANG dominated and controlled GREAT MARK through her activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

125.    YANG made financial decisions with respect to GREAT MARK.

126.    ZHAN dominated and controlled GREAT MARK through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and inventory, filing of bank records and business records, drawing checks and funds from the company.

127.    ZHAN made financial decisions with respect to GREAT MARK.

128.    GREAT MARK is a mail order business with a website.

129.    The website address at one point in time was  www.usecret.com.

130.    GREAT MARK currently operates a website.

131.    Jian Liang was an employee of GREAT MARK.

132.    Kwion Leung was an employee of GREAT MARK.

133.    Jian Liang's job was to take orders that came in fron the website over the internet.

134.    GREAT MARK conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354- a location which was purchased in the name of YANG in 2005.

**EZ FANTASY**

14

135.    EZ FANTASY was incorporated in March 17, 2006.

136.    E.Z FANTASY's New York Department of State authorized officer for service of legal process is: YANG  at: 33-70 Prince Street, #CA28, Flushing, NY 11354.

137.    EZ FANTASY conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354- a location which was purchased in the name of YANG in 2005.

138.    EZ FANTASY conducted its business at 135-17 40th Road, Flushing, New York.

139.    EZ FANTASY conducted its phone reception and mail order business activities at 1101 Metropolitan Avenue, Brooklyn, NY 11211.

140.    ZHAN is the sole 100% owner of the issued and outstanding shares in EZ FANTASY.

141.    YANG is the sole 100% owner of the issued and outstanding shares in EZ FANTASY.

142.    ZHAN is an owner of the issued and outstanding shares in EZ FANTASY.

143.    YANG is an owner of the issued and outstanding shares in EZ FANTASY.

144.    ZHAN was an officer of EZ FANTASY.

145.    YANG was an officer of EZ FANTASY.

146.    ZHAN is the putative owner of EZ FANTASY.

147.    YANG is the putative owner  of EZ FANTASY.

148.    YANG dominated and controlled EZ FANTASY through her activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

149.    YANG made financial decisions with respect to EZ FANTASY.

150.   ZHAN dominated and controlled EZ FANTASY through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and inventory, filing of bank records and business records, drawing checks and funds from the company.

151.   ZHAN made financial decisions with respect to EZ FANTASY

152.   EZ FANTASY was in the business of dealing, selling, shipping, purchasing, and otherwise transacting in health products such as cosmetics, teas, eye creams.

153.    EZ FANTASY was in the business of dealing, selling, shipping, purchasing, and otherwise transacting in and adult products/ adult toys.

154.   EZ FANTASY was in the businesss of dealing, selling, shipping, purchasing CD's and DVD's.

155.   EZ FANTASY is a mail order business with a website.

156.   The website address at one point in time was  www.usecret.com.

157.   EZ FANTASY was dissolved by proclamation on January 27, 2010.

**G.K EXOTIC**

158.   G.K EXOTIC's principal place of business is located at 136-15 41ST Street, Flushing, NY 11355.

159.   G.K EXOTIC conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354- a location which was purchased in the name of YANG in 2005.

160.   G.K EXOTIC conducted its business at 135-17 40th Road, Flushing, New York.

161.   G.K EXOTIC conducted its phone reception and mail order business activities at 1101 Metropolitan Avenue, Brooklyn, NY 11211.

162.   ZHAN is the sole 100% owner of the issued and outstanding shares in G.K EXOTIC.

163.   YANG is the sole 100% owner of the issued and outstanding shares in G.K EXOTIC.

164.   ZHAN is an owner of the issued and outstanding shares in G.K EXOTIC.

165.   YANG is an owner of the issued and outstanding shares in G.K EXOTIC.

166.   ZHAN was an officer of G.K EXOTIC.

167.   YANG was an officer of G.K EXOTIC.

168.   ZHAN is the putative owner of G.K EXOTIC.

169.   YANG is the putative owner  of G.K EXOTIC.

170.   G.K EXOTICEXOTIC is in the business of selling adult toys, novelty items and lingerie.

171.   YANG dominated and controlled G.K EXOTIC through her activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

172.   YANG made financial decisions with respect to G.K EXOTIC.

173.   ZHAN dominated and controlled G.K EXOTIC through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and

inventory, filing of bank records and business records, drawing checks and funds from the company.

174.    ZHAN made financial decisions with respect to G.K EXOTIC.

175.    G.K EXOTIC was dissolved in November of 2014.

**BEAUTY LOVER**

176.    BEAUTY LOVER principal place of business is a retail store front at 136-15 41ST Street, Flushing, NY 11355.

177.    BEAUTY LOVER conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354- a location which was purchased in the name of YANG in 2005.

178.    BEAUTY LOVER onducted its business at 135-17 40th Road, Flushing, New York.

179.    BEAUTY LOVER conducted its business activities at 1101 Metropolitan Avenue, Brooklyn, NY 11211.

180.    ZHAN was an owner of shares in BEAUTY LOVER.

181.    YANG was an owner of shares in BEAUTY LOVER.

182.    ZHAN was an officer of BEAUTY LOVER.

183.    YANG was an officer of BEAUTY LOVER.

184.    ZHAN is the putative owner of BEAUTY LOVER.

185.    YANG is the putative owner  of BEAUTY LOVER.

186.    BEAUTY LOVER operated a retail location in the business of selling the business of selling, shipping and purchasing adult toys, novelty items and lingerie.

187.    BEAUTY LOVER operated a retail location in the business of  selling, shipping, purchasing, and otherwise transacting in health products such as cosmetics, teas, eye creams.

188.    YANG dominated and controlled BEAUTY LOVER through her activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

189.    YANG made financial decisions with respect to BEAUTY LOVER.

190.    ZHAN dominated and controlled BEAUTY LOVER through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and inventory, filing of bank records and business records, drawing checks and funds from the company.

191.    ZHAN made financial decisions with respect to BEAUTY LOVER.

192.    BEAUTY LOVER  was dissolved by Dissolution on December 24, 2008.

**JOHNSON STORAGE INC.**

193.    STORAGE INC. principal place of business is a

194.    STORAGE INC. conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354- a location which was purchased in the name of YANG in 2005.

195.    ZHAN was an owner of shares in STORAGE INC.

196.    YANG was an owner of shares in STORAGE INC.

197.    ZHAN was an officer of STORAGE INC.

198.    YANG was an officer of STORAGE INC.

199.    ZHAN is the putative owner of STORAGE INC.

200.    YANG is the putative owner  of STORAGE INC.

201.    YANG dominated and controlled STORAGE INC through her activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

202.    YANG made financial decisions with respect to STORAGE INC.

203.    ZHAN dominated and controlled STORAGE INC through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and inventory, filing of bank records and business records, drawing checks and funds from the company.

204.    ZHAN made financial decisions with respect to JOHNSON STORAGE INC.

**J & J GLOBAL USA, INC.**

205.    J & J was incorporated on October 29, 2007.

206.    J & J New York Department of State location for service of legal process is 33-70 Prince Street, #CA28, Flushing, NY 11354.

207.    J & J  conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354-a location which was purchased in the name of YANG in 2005.

208.    J & J  conducted its business at 135-17 40th Road, Flushing, New York.

209.    J & J  conducted its warhouse business activities at  38-42 Review Avenue, Long Island City, New York.

210.    J & J  conducted its phone reception and mail order business activities at 1101 Metropolitan Avenue, Brooklyn, NY 11211

211.   YANG is the sole 100% owner of the issued and outstanding shares J & J.

212.   YANG is the sole 100% owner of the issued and outstanding shares in J & J .

213.   ZHAN is an owner of the issued and outstanding shares in J & J

214.   YANG is an owner of the issued and outstanding shares in J & J  .

215.   ZHAN was an officer of J & J  .

216.   YANG was an officer of J & J  .

217.   ZHAN is the putative owner of J & J  .

218.   YANG is the putative owner  of J & J  .

219.   YANG dominated and controlled J & J   through her activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

220.   YANG made financial decisions with respect to J & J  .

221.   ZHAN dominated and controlled J & J   through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and inventory, filing of bank records and business records, drawing checks and funds from the company.

222.   ZHAN made financial decisions with respect to J & J

223.   J & J   was in the business of dealing, selling, shipping, purchasing, and otherwise transacting in health products such as cosmetics, teas, eye creams.

224.    J & J  was in the business of dealing, selling, shipping, purchasing, and otherwise transacting in and adult products/ adult toys.

21

225.    J & J   was in the businesss of dealing, selling, shipping, purchasing CD's and DVD's.

226.    J & J   is a mail order business with a website.

227.    The website address at one point in time was  www.usecret.com.

228.    J & J   was in the business of storing and warehousing items for itself and third-parties for a fee.

**ZME GALAXY CORP.**

229.    ZME was incorporated on February 18, 2014.

230.    ZME New York Department of State location for service of legal process is 67-49 166th Street, Fresh Meadows, New York 11365.

231.    ZME  conducted its business at: 33-70 Prince Street, #CA28, Flushing, NY 11354-a location which was purchased in the name of YANG in 2005.

232.    ZME  conducted its business at 135-17 40th Road, Flushing, New York.

233.    ZME conducted its warhouse business activities at  38-42 Review Avenue, Long Island City, New York.

234.    ZME  conducted its phone reception and mail order business activities at 1101 Metropolitan Avenue, Brooklyn, NY 11211

235.    YANG is the sole 100% owner of the issued and outstanding shares ZME.

236.    YANG is the sole 100% owner of the issued and outstanding shares in ZME.

237.    ZHAN is an owner of the issued and outstanding shares in ZME.

238.    YANG is an owner of the issued and outstanding shares in ZME.

239.    ZHAN was an officer of ZME.

240.    YANG was an officer of  ZME.

241.    ZHAN is the putative owner of ZME.

242.    YANG is the putative owner  of ZME.

243.    YANG dominated and controlled ZME through her activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

244.    YANG made financial decisions with respect to ZME.

245.    ZHAN dominated and controlled ZME through his activities which included but were not limited to:purchasing merchandise; ordering goods from overseas; setting employee salaries; hiring and firng personnel; reviewing financial reports, and accounting information, bank records, track imports that come into the warehouse, track all goods sold and inventory, filing of bank records and business records, drawing checks and funds from the company.

246.    ZHAN made financial decisions with respect to ZME.

247.    ZHAN is a salaried employee of ZME.

248.    YANG is a salaried employee of ZME.

249.    ZHAN is a compensated by ZME.

250.    YANG is a compensated by ZME.

251.    ZME is in the business of dealing, selling, shipping, purchasing, and otherwise transacting in health products such as cosmetics, teas, eye creams.

252.     ZME is in the business of dealing, selling, shipping, purchasing, and otherwise transacting in and adult products/ adult toys.

253.    ZME is in the businesss of dealing, selling, shipping, purchasing CD's and DVD's.

254.    ZME  is a mail order business with a website.

23

255. The website address at one point in time was www.usecret.com.

256. ZME is in the business of storing and warehousing items for itself and third-parties for a fee.

257. ZME is a successor to J & J

258. ZME is a successor to GK.

259. ZME is a successor to KINGSLAND.

260. ZME is a successor to STORAGE.

261. ZME is a successor to GREAT MARK.

262. ZME is a successor to STARMARK.

**EDMUND ZHAN**

263. E ZHAN is the son of YANG and ZHAN.

264. E ZHAN is the Vice President of ZME, since September 11, 2016.

265. E ZHAN  is the sole 100% owner of the issued and outstanding shares ZME.

266. E ZHAN is an owner of the issued and outstanding shares in ZME.

267. E ZHAN dominated and controlled ZME through his activities which included but were not limited to: supervising the staff schedules; collecting payments from clients; ordering goods; coordinating shipment of goods; accounting, management reporting; sales; and drawing checks and funds from the company.

268. E ZHAN made financial decisions with respect to ZME.

269. E ZHAN drew ZME checks to YANG.

270. E ZHAN drew ZME checks to ZHAN.

271. E ZHAN drew ZME checks to himself.

**TRANSFERS OF MONEY BETWEEN PERSONS AND ENTITIES
ZHAN AND YANG JOINT MONIES INTO KINGSLAND INTERNATIONAL**

272.     In or about July of 2002, ZHAN and YANG drew money from their joint bank account at China Trust Bank account ending in 701, check number 145 to Kingsland International Inc. in the amount of $20,000.

273.     The memo portion of the check read: "loan to comp."

274.     YANG received payment from Kingsland International Inc. in the form of a salary by check drawn on July 30, 2002.

**WASHINGTON MUTUAL CREDIT LINE MONIES
TO AND FROM GREAT KINGSLAND**

275.     On September 13, 2006, GREAT KINGSLAND drew a check in the amount of $30,000 made payable to the Washington Mutual Credit Line.

276.     The $30,0000 September 13, 2006 check was signed by YANG and the memo portion of the said check stated "loan return."

277.     On November 13, 2006, GREAT KINGSLAND drew a check in the amount of $50,000 made payable to the Washington Mutual Credit Line.

278.     The $50,000 November 13, 2006 check was signed by ZHAN and the memo portion of the said check stated "equity loan return"

279.     On November 16, 2006, GREAT KINGSLAND drew a check in the amount of $30,000 made payable to the Washington Mutual Credit Line.

280.     The $30,000 November 16, 2006 check was signed by ZHAN and the memo portion of the said check stated "return equity loan."

281.     On December 12, 2006, GREAT KINGSLAND drew a check in the amount of $50,000 made payable to the Washington Mutual Credit Line.

282.     The $50,0000 December 12, 2006 check  was signed by ZHAN and the memo portion of the said check stated "repayment personal loan."

**GREAT KINGSLAND MONIES WITHDRAWN BY YANG**

283.     On December 13, 2006, YANG drew a check from GREAT KINGSLAND in the amount of  $1,600 made payable to cash and withdrew the funds.

284.     On December 27, 2006, YANG drew a check from GREAT KINGSLAND in the amount of  $5,800 made payable to cash and withdrew the funds.

**GREAT KINGSLAND MONIES TO AND FROM BEAUTY LOVER**

285.     At all relevant times including 2006, GREAT KINGSLAND paid associated with the real property located at 136-15 41st Avenue, Flushing  New York 11355 (hereinafter referred to as "Flushing Property") to  a company called Madison Realty.

286.     At all relevant times including 2006, BEAUTY LOVER made payments to GREAT KINGSLAND.

287.     The Flushing Property was a store front retail establishment.

288.     GREAT KINGSLAND was an owner, partner, joint venturerm member of BEAUTY LOVER.

**GREAT KINGSLAND MONIES COMMINGLED WITH G.K EXOTIC**

289.     GREAT KINGSLAND received payments from third-parties that it deposited into the bank  account of G.K EXOTIC.

290.     In or about 2007 GREAT KINGSLAND received payment in the sum of $4,218.07 which was deposited by YANG into the account of G.K EXOTIC.

**YANG MONIES INTO AND OUT OF GREAT KINGSLAND**

291.    YANG drew a check from upon information and belief, her personal North Fork Bank Account in February of 2007 made payable to GREAT KINGSLAND in the sum of $15,000.

292.    YANG drew a check from, upon information and belief, her personal North Fork Bank Account in March of 2007 made payable to GREAT KINGSLAND in the sum of $2,000.

293.    On April 23, 2007, YANG drew a check from Great Kingsland in the amount of $3,000 made payable to cash and withdrew the funds.

**YANG AND ZHAN MONIES INTO STAR MARK**

294.    On July 30, 2002, a check number 146 was drawn to STAR MARK. in the amount of $15,000 from YANG and ZHAN's joint China Trust Back of New York Bank account.

295.    The memo portion of the check read: "loan to comp."

**WASHINGTON MUTUAL CREDIT LINE MONIES**
**TO AND FROM GREAT MARK**

296.    On December 14, 2006 ZHAN drew check number 0332 from the account of GREAT MARK made payable to Washington Mutual Credit Line the amount of $1,456.47. The memo portion of the check read "Return to personal loan."

**GREAT MARK MONEY TO ZHAN**

297.    On July 16, 2007 ZHAN drew check number 0566 from the account of GREAT MARK made payable to himself in the amount of $10,000, and he deposited the check.

298.    On July 16, 2007 ZHAN drew check number 0565 from the account of GREAT MARK made payable to himself in the amount of $5,000. The memo portion of the check read "Return Personal Loan."

**GREAT MARK MONEY TO CASH: ZHAN**

299.   On November 2, 2005 ZHAN drew a check from GREAT MARK, in the amount of  $4,800 made payable to cash and withdrew the funds.

300.   On November 4, 2005 ZHAN drew a check from GREAT MARK, in the amount of  $1,000 made payable to cash and withdrew the funds.

301.   On September 21, 2007 ZHAN drew a check from GREAT MARK, in the amount of  $3,015 made payable to cash and withdrew the funds.

302.   On October 9, 2007 ZHAN drew a check from GREAT MARK, in the amount of $2,918 made payable to cash and withdrew the funds.

303.   On November 6, 2007 ZHAN drew a check from GREAT MARK, in the amount of  $5,000 made payable to cash and withdrew the funds.

304.   On November 16, 2007 ZHAN drew a check from GREAT MARK, in the amount of  $5,000 made payable to cash and withdrew the funds.

305.   On November 20, 2007 ZHAN drew a check from GREAT MARK, in the amount of  $4,765 made payable to cash and withdrew the funds.

**GREAT MARK MONEY TO CASH: YANG**

306.   On October 24, 2007 YANG drew a check from GREAT MARK, in the amount of $10,000 made payable to cash and withdrew the funds.

307.   On January,  20, 2007 YANG drew a check from GREAT MARK, in the amount of  $3,000 made payable to cash and withdrew the funds.

308.   On February 2, 2007 YANG drew a check from GREAT MARK, in the amount of $4,000 made payable to cash and withdrew the funds.

309.   On December 22, 2005 YANG drew a check from GREAT MARK, in the amount of  $5,000 made payable to cash and withdrew the funds.

28

310.    On December 12, 2006 YANG drew a check from GREAT MARK, in the amount of  $6,000 made payable to cash and withdrew the funds.

311.    On April 21, 2007 YANG drew a check from GREAT MARK, in the amount of $3,800 made payable to cash and withdrew the funds.

### YANG AND ZHAN JOINT BANK ACCOUNT MONEY TO G.K

312.    On July 13, 2007, ZANG drew check numbered 581 form the joint North Fork Bank Account entitled YI GIANG ZHAN a JESSICA X. YANG in the sum of $10,000 made payable to G.K EXOTIC.

313.    On August 2, 2007, ZANG drew check numbered 487 form the joint North Fork Bank Account entitled YI GIANG ZHAN a JESSICA X. YANG in the sum of $10,000 made payable to G.K EXOTIC.

314.    On August 28, 2007, ZANG drew check numbered 492 form the joint North Fork Bank Account entitled YI GIANG ZHAN a JESSICA X. YANG in the sum of $8,000 made payable to G.K EXOTIC.

### GREAT MARK MONEY TO G.K EXOTIC

315.    On September 28, 2007, ZHAN signed a check drawn from GREAT MARK's North Fork Bank account and paid $5,000 to G.K EXOTIC.

316.    At all relevant times including August of 2007 G.K EXOTIC received payments from BEAUTY LOVER.

### MONIES INTO AND OUT OF STORAGE INC.

317.    STORAGE INC.' address for service of process on file with the New York Department of State was Johnson Storage Inc. 1101 Metropolitan Avenue, Brooklyn, NY 11211.

318.    YANG was a signor on STORAGE INC.'s bank account.

319.    On March 17, 2007, YANG wrote a check from the North Fork Bank Account of STORAGE INC. made payable to GREAT KINGSLAND in the amount of $9,000.

320.    The check from STORAGE INC. was cashed by ZHAN on the same day the check was drawn.

### MONEY INTO AND OUT OF  J & J

321.    J & J drew check numbered 1017 from its Flushing Savings Bank Account in the sum of $6,500 on October 31, 2011.

322.    J & J drew checks to Madison Realty Co. to pay monthly rent for 136-15 41st Avenue, Flushing New York.

323.    J & J drew checks to Madison Realty Co. to pay monthly rent for 136-15 41st Avenue, Flushing New York, the same payments were made to Madison by KINGSLAND and GK EXOTIC.

324.    J & J drew checks to Mar-LOS II. to pay monthly rent for 38-42 Review Avenue, Long Island City, New York.

325.    J & J drew checks to Mar-LOS II. to pay monthly rent for 38-42 Review Avenue, Long Island City, New York, the same payments were made to Madison by KINGSLAND and GK EXOTIC.

### MONEY INTO AND OUT OF  ZME

326.    ZME received payments from GK Exotic.

327.     ZME paid $9,000 to GK Exotic on September 8, 2016 from its Flushing Savings Bank Accountm check number 1034.

328.     ZME paid $28,000 to GK Exotic on September 7, 2016 from its Flushing Savings Bank Accountm check number 1036.

329.     ZME received rent from L&L Construction Development Inc, for the use of Office Condo- described in this Complaint.

330.     ZME received payments from Madame Shiniie for rent at 136-15 41st Avenue.

331.     ZME  drew checks to Madison Realty Co. to pay monthly rent for 136-15 41st Avenue, Flushing New York.

332.     ZME drew checks to Madison Realty Co. to pay monthly rent for 136-15 41st Avenue, Flushing New York, the same payments were made to Madison by  J & J, KINGSLAND and GK EXOTIC.

333.     ZME drew checks to Mar-LOS II. to pay monthly rent for 38-42 Review Avenue, Long Island City, New York.

334.     ZME  drew checks to Mar-LOS II. to pay monthly rent for 38-42 Review Avenue, Long Island City, New York, the same payments were made to Madison by J & J, KINGSLAND and GK EXOTIC.

335.     ZME made payments to YANG.

336.     ZME made payments to ZHAN.

337.     ZME made payments to YANG as compensation for employment.

338.     ZME made payments to ZHAN as compensation for employment.

339.     ZME made payments to YANG as compensation for services rendered.

340.     ZME made payments to ZHAN as compensation for services rendered.

341.    ZME mase payments to Flushing Tower Condominium-the OFFICE CONDO, defined in this Complaint.

342.    ZME made payments to MICHAEL ZHAN.

343.    ZME paid over $35,000 to C C A Industries, which is a company that  markets health and beauty aids. The Company's products include nail treatment, hair treatment, skin care, oral health, and dietary products. CCA Industries' products are sold to drug and food chains, mass merchandisers, and wholesale beauty-aids distributors throughout the United States and Canada.

344.    ZME paid money that benefitted GK EXOTIC.

345.    ZME paid money that benefited EZ.

346.    ZME paid money that benefited  the defendants other corporate entities.

347.    ZME paid money that benefited  the defendants, YANG, ZHAN, and E ZHAN.

**OFFICE CONDOMINIUM PURCHASED IN YANG'S NAME**

348.    By deed executed on August 8, 2005, YANG became the sole owner of record in fee simple absolute of the real property known as: 33-70 Prince Street, Unit CA28, Queens County, City and State of New York, 11354, known on the tax maps as Queens Block 4946, Lot 1127 (Entire Lot) CA28  (hereinafter referred to as the "OFFICE CONDO").

349.    The YANG Property is a commercial condominium unit.

350.    The YANG Property is not encumbered by any liens or encumbrances as of the date hereof.

351.    Upon information and belief, YANG and/or ZHAN provide the money to purchase the YANG Property.

352.    Corporate or company entities owned or otherwise controlled by YANG and/or ZHAN provided the money to purchase the OFFICE CONDO.

353.    Monies owned jointly by YANG and/or ZHAN provided the money to purchase the OFFICE CONDO.

354.    YANG and/or ZHAN have at all relevant times provided the money to maintain, operate, and pay the necessary expenses for the OFFICE CONDO.

355.    Corporate or company entities owned or otherwise controlled by YANG and/or ZHAN, have at all relevant times provided the money to maintain, operate, and pay the necessary expenses for the OFFICE CONDO.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment Great Kingsland is Successor/Mere Continuation Company of Star Mark Management Inc.)**

356.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "355" set forth above, as if more fully set forth herein.

357.    Star Mark and GREAT KINGSLAND had same office space.

358.    Star Mark and GREAT KINGSLAND had the same an address.

359.    Star Mark and GREAT KINGSLAND had the same employees and management.

360.    Star Mark and GREAT KINGSLAND were in the same line of business.

361.    STAR MARK  and GREAT KINGSLAND had the same customers.

362.    STAR MARK  and GREAT KINGSLAND had the same venders.

363.    GREAT KINGSLAND's business was a continuation of STAR MARK's business.

364.    GREAT KINGSLAND was created to frustrate and impede plaintiff from enforcing the judgment against Star Mark that was later obtained by plaintiff.

365.    GREAT KINGSLAND was created to fraudulently convey, secret, waste, strip, and render judgment proof, STAR MARK.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment G.K Exotic is the Alter Ego/Successor/Mere Continuation of GREAT MARK)**

366.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "365" set forth above, as if more fully set forth herein.

367.    G.K EXOTIC and GREAT MARK had same office space.

368.    G.K EXOTIC and GREAT MARK had the same an address.

369.    G.K EXOTIC and GREAT MARK  had the same employees and management.

370.    G.K EXOTIC and GREAT MARK were in the same line of business.

371.     G.K EXOTIC was created to frustrate and impede plaintiff from enforcing the judgment against GREAT MARK that was later obtained by plaintiff.

372.    G.K EXOTIC was created to fraudulently convey, secret, waste, strip, and render judgment proof, GREAT MARK.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Declaratory Judgment G.K Exotic is the Alter Ego/Successor/Mere Continuation of of Great Kingsland.)**

373.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "372" set forth above, as if more fully set forth herein.

374.    G.K EXOTIC and GREAT KINGSLAND had same office space.

375.    G.K EXOTIC and GREAT KINGSLAND had the same an address.

376.    G.K EXOTIC and GREAT KINGSLAND had the same employees and management.

377.    G.K EXOTIC and GREAT KINGSLAND were in the same line of business.

378.    G.K EXOTIC was created and used to frustrate and impede plaintiff from enforcing the judgment that was later obtained by plaintiff against the judgment debtor defendants.

379.    G.K EXOTIC was created to fraudulently convey, secret, waste, strip, and render judgment proof the judgment debtor defendants.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Declaratory Judgment EZ Fantasy is the Alter Ego/Successor/Mere Continuation of of GREAT MARK)

380.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "379" set forth above, as if more fully set forth herein.

381.    EZ Fantasy and GREAT MARK had same office space.

382.    EZ Fantasy and GREAT MARK had the same an address.

383.    EZ Fantasy and GREAT MARK  had the same employees and management.

384.    EZ Fantasy and GREAT MARK were in the same line of business.

385.     EZ Fantasy was created to frustrate and impede plaintiff from enforcing the judgment against GREAT MARK that was later obtained by plaintiff.

386.    EZ FANTASY was created to fraudulently convey, secret, waste, strip, and render judgment proof, GREAT MARK.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Declaratory Judgment EZ Fantasy is the Alter Ego/Successor/Mere Continuation of of G.K Exotic)

387.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "386" set forth above, as if more fully set forth herein.

388.    EZ FANTASY and G.K EXOTIC had same office space.

389.     EZ FANTASY and G.K EXOTIC had the same an address.

390.     EZ FANTASY and G.K EXOTIC had the same employees and management.

391.      EZ FANTASY and G.K EXOTIC were in the same line of business.

392.     EZ FANTASY was created to frustrate and impede plaintiff from enforcing the judgment against G.K EXOTIC that was later obtained by plaintiff.

393.     EZ FANTASY was created to fraudulently convey, secret, waste, strip, and render judgment proof, G.K EXOTIC.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Declaratory Judgment EZ Fantasy is the Alter Ego/Successor/Mere Continuation of of Great Kingsland)**

394.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "393" set forth above, as if more fully set forth herein.

395.     EZ FANTASY and GREAT KINGSLAND and had same office space.

396.     EZ FANTASY and GREAT KINGSLAND had the same an address.

397.     EZ FANTASY and GREAT KINGSLAND had the same employees and management.

398.      EZ FANTASY and GREAT KINGSLAND were in the same line of business.

399.     EZ FANTASY was created to frustrate and impede plaintiff from enforcing the judgment against GREAT KINGSLAND that was later obtained by plaintiff.

400.     EZ FANTASY was created to fraudulently convey, secret, waste, strip, and render judgment proof, GREAT KINGSLAND.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Pierce the Corporate Veil of GREAT KINGSLAND to attach liability to YANG)

401.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "400" set forth above, as if more fully set forth herein.

402.    GREAT KINGSLAND did not have annual meetings of shareholders.

403.    GREAT KINGSLAND did not elect officers.

404.    GREAT KINGSLAND did not have meetings of officers.

405.    GREAT KINGSLAND did not keep any corporate minutes.

406.    GREAT KINGSLAND did not adhere to any corporate formalities.

407.    GREAT KINGSLAND did not issue stock.

408.    GREAT KINGSLAND did not maintain, generate, or keep corporate records.

409.    GREAT KINGSLAND did not conduct shareholder meetings.

410.    YANG at all relevant times was an officer of GREAT KINGSLAND.

411.    YANG at all relevant times was an owner of GREAT KINGSLAND.

412.    YANG at all relevant times exercised considerable authority over Kingsland to the point of completely disregarding corporate form.

413.    YANG at  all relevant times acted as though its assets were hers alone to manage and distribute.

414.    GREAT KINGSLAND funds were commingled with YANG's personal monies.

415.    GREAT KINGSLAND funds were taken out of the corporation for YANG's personal purposes and benefit.

416.    YANG's monies were conveyed into GREAT KINGSLAND.

417.    YANG directed that GREAT KINGSLAND monies be transferred to G.K EXOTIC.

418.    YANG directed that GREAT KINGSLAND monies be transferred to Beauty Lover Express, Inc.

419.    YANG dominated and controlled GREAT KINGSLAND to strip the corporation of its assets in anticipation of impending legal liability to plaintiff.

420.    YANG dominated and controlled GREAT KINGSLAND to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against STAR MARK- the predecessor in interest of GREAT KINGSLAND.

421.    YANG dominated and controlled GREAT KINGSLAND to fraudulently convey, secret, waste, strip, and render judgment proof, STAR MARK.

422.    The plaintiff has been harmed by YANG's wrong doing.

## AS AND FOR AN EIGHTH   CAUSE OF ACTION
### (Pierce the Corporate Veil of GREAT KINGSLAND to attach liability to ZHAN)

423.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "422" set forth above, as if more fully set forth herein.

424.    ZHAN at all relevant times was an officer of GREAT KINGSLAND.

425.    ZHAN, at all relevant times was the owner of GREAT KINGSLAND.

426.    ZHAN at all relevant times exercised considerable authority over Kinglsand to the point of completely disregarding corporate form.

427.    ZHAN at  all relevant times acted as though its assets were his alone to manage and distribute.

428.    GREAT KINGSLAND funds were commingled with ZHAN's personal monies.

429.     GREAT KINGSLAND funds were taken out of the corporation for ZHAN's personal purposes and benefit.

430.     ZHAN's monies were put into GREAT KINGSLAND.

431.     ZHAN directed that GREAT KINGSLAND monies be transferred to G.K EXOTIC.

432.     ZHAN directed that GREAT KINGSLAND monies be transferred to BEAUTY LOVER.

433.     ZHAN dominated and controlled GREAT KINGSLAND to strip the corporation of its assets in anticipation of impending legal liability to plaintiff.

434.     ZHAN dominated and controlled GREAT KINGSLAND to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against STAR MARK- the predecessor in interest of GREAT KINGSLAND.

435.     ZHAN dominated and controlled GREAT KINGSLAND to fraudulently convey, secret, waste, strip, and render judgment proof, STAR MARK.

436.     The plaintiff has been harmed by ZHAN's wrong doing.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Declaratory Judgment Zhan is the Owner/ Equitable/ Putative Owner of KINGSLAND)

437.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "436" set forth above, as if more fully set forth herein.

438.     ZHAN exercised considerable authority over KINGSLAND to the point of completely disregarding the corporate form.

439.     ZHAN acted as though the assets of KINGSLAND were his alone to manage and distribute.

440.   ZHAN controlled and directed the activities of KINGSLAND.

441.   ZHAN's actions with respect to KINGSLAND's assets caused harm to the Plaintiff.

442.   Plaintiff is entitled to declaratory judgment that ZHAN was/is an owner of KINGSLAND.

443.   Plaintiff is entitled to declaratory judgment that ZHAN was/is an equitable/putative owner of KINGSLAND.

**AS AND FOR A TENTH CAUSE OF ACTION**
**(Declaratory Judgment YANG is the Equitable/ Putative Owner of KINGSLAND)**

444.   The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "443" set forth above, as if more fully set forth herein.

445.   YANG acted as though the assets of KINGSLAND were hers alone to manage and distribute.

446.   YANG controlled and directed the activities of KINGSLAND.

447.   YANG's actions with respect to KINGSLAND's assets caused harm to the Plaintiff.

448.   Plaintiff is entitled to declaratory judgment that YANG was/is an owner of KINGSLAND.

449.   Plaintiff is entitled to declaratory judgment that YANG was/is an equitable/putative owner of KINGSLAND.

**AS AND FOR AN ELEVENTH  CAUSE OF ACTION**
**(Pierce the Corporate Veil of GREAT MARK to attach liability to ZHAN)**

450.   The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "449" set forth above, as if more fully set forth herein.

451.   GREAT MARK did not have annual meetings of shareholders.

40

452.    GREAT MARK did not elect officers.

453.    GREAT MARK did not have meetings of officers.

454.    GREAT MARK did not keep any corporate minutes.

455.    GREAT MARK did not adhere to any corporate formalities.

456.    GREAT MARK did not issue stock.

457.    ZHAN, at all relevant times was an owner of GREAT MARK.

458.    ZHAN at all relevant times was an officer of GREAT MARK.

459.    ZHAN at all relevant times exercised considerable authority over GREAT MARK to the point of completely disregarding corporate form.

460.    ZHAN at all relevant times acted as though its assets were his alone to manage and distribute.

461.    GREAT MARK funds were commingled with ZHAN's personal monies.

462.    GREAT MARK funds were taken out of the corporation for ZHAN's personal purposes and benefit.

463.    ZHAN's monies were put into GREAT MARK.

464.    ZHAN directed that GREAT MARK monies be transferred to G.K EXOTIC.

465.    ZHAN dominated and controlled GREAT MARK to strip the corporation of its assets in anticipation of impending legal liability to plaintiff.

466.    ZHAN dominated and controlled GREAT MARK to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against GREAT MARK.

467.    ZHAN dominated and controlled GREAT KINGSLAND to fraudulently convey, secret, waste, strip, and render judgment proof, GREAT MARK.

468.    The plaintiff has been harmed by ZHAN's wrong doing.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Pierce the Corporate Veil of GREAT MARK to attach liability to YANG)

469.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "468" set forth above, as if more fully set forth herein.

470.    YANG, at all relevant times was the owner of GREAT MARK.

471.    YANG at all relevant times was the officer of GREAT MARK.

472.    YANG at all relevant times exercised considerable authority over GREAT MARK to the point of completely disregarding corporate form.

473.    YANG at  all relevant times acted as though its assets were hers alone to manage and distribute.

474.    YANG at all relevant times exercised considerable authority over GREAT MARK to the point of completely disregarding corporate form.

475.    GREAT MARK funds were commingled with YANG's personal monies.

476.    GREAT MARK funds were taken out of the corporation for YANG's personal purposes and benefit.

477.    YANG's monies were put into GREAT MARK.

478.    YANG directed that GREAT MARK monies be transferred to G.K EXOTIC.

479.    YANG dominated and controlled GREAT MARK to strip the corporation of its assets in anticipation of impending legal liability to plaintiff.

480.    YANG dominated and controlled GREAT MARK to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against GREAT MARK.

481.    YANG dominated and controlled GREAT MARK to fraudulently convey, secret, waste, strip, and render judgment proof, GREAT MARK.

482.    The plaintiff has been harmed by YANG's wrong doing.

**AS AND FOR A THIRTEENTH  CAUSE OF ACTION**
**(Declaratory Judgment Zhan is the Equitable/ Putative Owner of GREAT MARK)**

483.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "482" set forth above, as if more fully set forth herein.

484.    ZHAN acted as though the assets of GREAT MARK were his alone to manage and distribute.

485.    ZHAN controlled and directed the activities of GREAT MARK

486.    ZHAN's actions with respect to GREAT MARK's assets caused harm to the Plaintiff.

487.    Plaintiff is entitled to declaratory judgment that ZHAN was/is an owner of GREAT MARK.

488.    Plaintiff is entitled to declaratory judgment that ZHAN was/is an equitable/putative owner of GREAT MARK.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION**
**(Declaratory Judgment YANG is the Equitable/ Putative Owner of GREAT MARK)**

489.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "488" set forth above, as if more fully set forth herein.

490.    YANG acted as though the assets of GREAT MARK were hers alone to manage and distribute.

491.    YANG controlled and directed the activities of GREAT MARK.

492.    YANG's actions with respect to GREAT MARK's assets caused harm to the Plaintiff.

493.    Plaintiff is entitled to declaratory judgment that YANG was/is an owner of GREAT MARK.

494.    Plaintiff is entitled to declaratory judgment that YANG was/is an equitable/putative owner of GREAT MARK.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
**(Pierce the Corporate Veil of G.K EXOTIC to attach liability to YANG)**

495.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "494" set forth above, as if more fully set forth herein.

496.    G.K EXOTIC did not have annual meetings of shareholders.

497.    G.K EXOTIC did not elect officers.

498.    G.K EXOTIC did not have meetings of officers.

499.    G.K EXOTIC did not keep any corporate minutes.

500.    G.K EXOTIC did not adhere to any corporate formalities.

501.    G.K EXOTIC did not issue stock.

502.    YANG, at all relevant times was the owner of G.K EXOTIC.

503.    YANG at all relevant times was an officer of G.K EXOTIC.

504.    YANG at all relevant times exercised considerable authority over G.K EXOTIC to the point of completely disregarding corporate form.

505.    YANG at all relevant times acted as though its assets were hers alone to manage and distribute.

506.    YANG commingled her personal funds with those of G.K. EXOTIC.

507.    G.K EXOTIC funds were taken out of the corporation by YANG for her own personal purposes and benefit.

508.     YANG directed that GREAT KINGSLAND monies be paid to and for the benefit of G.K EXOTIC.

509.     YANG directed that GREAT MARK monies be paid to and for the benefit of G.K EXOTIC.

510.     YANG dominated and controlled  G.K EXOTIC to divert business and assets from GREAT MARK and GREAT KINGSLAND in anticipation of impending legal liability to plaintiff.

511.     YANG dominated and controlled  G.K EXOTIC to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

512.     YANG dominated and controlled G.K EXOTIC to fraudulently convey, secret, waste, strip, and render judgment proof the judgment debtor defendants.

513.     YANG dominated and controlled  G.K EXOTIC to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against GREAT MARK.

514.     YANG dominated and controlled G.K EXOTIC to fraudulently convey, secret, waste, strip, and render judgment proof, GREAT MARK.

515.     The plaintiff has been harmed by YANG's wrong doing.


**AS AND FOR A SIXTEENTH CAUSE OF ACTION**
**(Pierce the Corporate Veil of G.K EXOTIC to attach liability to ZHAN)**

516.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "515" set forth above, as if more fully set forth herein.

517.     ZHAN, at all relevant times was the owner of G.K EXOTIC.

518.     ZHAN,  at all relevant times was an officer of G.K EXOTIC.

519.     ZHAN at all relevant times exercised considerable authority over G.K EXOTIC to the point of completely disregarding corporate form.

520.     ZHAN at  all relevant times acted as though its assets were his alone to manage and distribute.

521.     ZHAN commingled his personal funds with those of G.K. Exotic.

522.     Gk Exotic funds were taken out of the corporation by ZHAN,  for his own personal purposes and benefit.

523.     ZHAN directed that GREAT KINGSLAND monies be paid to and for the benefit of G.K EXOTIC.

524.     ZHAN directed that GREAT MARK monies be paid to and for the benefit of G.K EXOTIC.

525.     ZHAN dominated and controlled  G.K EXOTIC to divert business and assets from GREAT MARK and GREAT KINGSLAND in anticipation of impending legal liability to plaintiff.

526.     ZHAN used his control over G.K EXOTIC to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

527.      ZHAN dominated and controlled G.K EXOTIC to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

528.     The plaintiff has been harmed by ZHAN's wrong doing.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION
### (Declaratory Judgment Zhan is the Equitable/ Putative Owner of G.K EXOTIC)

529.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "528" set forth above, as if more fully set forth herein.

530.     ZHAN acted as though the assets of G.K EXOTIC were his alone to manage and distribute.

531.     ZHAN controlled and directed the activities of G.K EXOTIC.

532.     ZHAN's actions with respect to G.K EXOTIC's assets caused harm to the Plaintiff.

533.     Plaintiff is entitled to declaratory judgment that ZHAN was/is an owner of G.K EXOTIC.

534.     Plaintiff is entitled to declaratory judgment that ZHAN was/is an equitable/putative owner of G.K EXOTIC.

**AS AND FOR A  EIGHTEENTH CAUSE OF ACTION**
**(Declaratory Judgment YANG is the Equitable/ Putative Owner of G.K EXOTIC)**

535.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "534" set forth above, as if more fully set forth herein.

536.     YANG acted as though the assets of G.K EXOTIC were hers alone to manage and distribute.

537.     YANG controlled and directed the activities of G.K EXOTIC.

538.     YANG's actions with respect to G.K EXOTIC's assets caused harm to the Plaintiff.

539.     Plaintiff is entitled to declaratory judgment that YANG was/is an owner of G.K EXOTIC.

540.     Plaintiff is entitled to declaratory judgment that YANG was/is an equitable/putative owner of G.K EXOTIC.

**AS AND FOR A NINETEENTH   CAUSE OF ACTION**
**(Pierce the Corporate Veil of EZ FANTASY to attach liability to YANG)**

541.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "540" set forth above, as if more fully set forth herein.

542.   EZ FANTASY does not have annual meetings of shareholders.

543.   EZ FANTASY does not elect officers.

544.   EZ FANTASY does not have meetings of officers.

545.   EZ FANTASY does not keep any corporate minutes.

546.   EZ FANTASY does not adhere to any corporate formalities.

547.   EZ FANTASY does not issue stock.

548.   YANG at all relevant times was an officer of EZ FANTASY

549.   YANG at all relevant times was an owner of EZ FANTASY.

550.   YANG at all relevant times exercised considerable authority over EZ FANTASY to the point of completely disregarding corporate form.

551.   YANG at all relevant times acted as though its assets were hers alone to manage and distribute.

552.   YANG dominated and controlled EZ FANTASY to divert business and assets from GREAT MARK and GREAT KINGSLAND in anticipation of impending legal liability to plaintiff.

553.   YANG dominated and controlled EZ FANTASY to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

554.   YANG dominated and controlled EZ FANTSY to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

555.   The plaintiff has been harmed by YANG's wrong doing.

## AS AND FOR A TWENTIETH CAUSE OF ACTION
### (Pierce the Corporate Veil of EZ FANTASY to attach liability to ZHAN)

556.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "555" set forth above, as if more fully set forth herein.

557.    ZHAN, at all relevant times is the owner of EZ FANTASY.

558.    ZHAN at all relevant times is an officer of EZ FANTASY.

559.    ZHANg at all relevant times exercised considerable authority over EZ FANTASY to the point of completely disregarding corporate form.

560.    ZHAN at all relevant times acted as though its assets were his alone to manage and distribute.

561.    ZHAN used his control over EZ FANTASY to divert business and assets from GREAT MARK and GREAT KINGSLAND in anticipation of impending legal liability to plaintiff.

562.    ZHAN used his control over EZ FANTASY to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

563.    ZHAN dominated and controlled EZ FANTASY to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

564.    The plaintiff has been harmed by ZHAN's wrong doing.

## AS AND FOR A TWENTY-FIRST CAUSE OF ACTION
### (Declaratory Judgment Zhan is the Equitable/ Putative Owner of EZ FANTASY)

565.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "564" set forth above, as if more fully set forth herein.

566.    ZHAN acted as though the assets of EZ FANTASY were his alone to manage and distribute.

567.    ZHAN controlled and directed the activities of EZ FANTASY.

568.    ZHAN's actions with respect to EZ FANTASY's assets caused harm to the Plaintiff.

569.    Plaintiff is entitled to declaratory judgment that ZHAN was/is an owner of EZ FANTASY.

570.    Plaintiff is entitled to declaratory judgment that ZHAN was/is an equitable/putative owner of EZ FANTASY.

**AS AND FOR A TWENTY-SECOND  CAUSE OF ACTION**
**(Declaratory Judgment YANG is the Equitable/ Putative Owner of EZ FANTASY)**

571.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "570" set forth above, as if more fully set forth herein.

572.    YANG acted as though the assets of EZ FANTASY were hers alone to manage and distribute.

573.    YANG controlled and directed the activities of EZ FANTASY.

574.    YANG's actions with respect to EZ FANTASY's assets caused harm to the Plaintiff.

575.    Plaintiff is entitled to declaratory judgment that YANG was/is an owner of EZ FANTASY.

576.    Plaintiff is entitled to declaratory judgment that YANG was/is an equitable/putative owner of EZ FANTASY.

## AS AND FOR A TWENTY-THIRD CAUSE OF ACTION
### (Pierce the Corporate Veil of JOHNSON STORAGE INC. to attach liability to YANG)

577. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "576" set forth above, as if more fully set forth herein.

578. STORAGE INC. does not have annual meetings of shareholders.

579. STORAGE INC. does not elect officers.

580. STORAGE INC. does not have meetings of officers.

581. STORAGE INC. does not keep any corporate minutes.

582. STORAGE INC. does not adhere to any corporate formalities.

583. STORAGE INC. does not issue stock.

584. YANG, at all relevant times is the owner of STORAGE INC.

585. YANG at all relevant times is an officer of STORAGE INC.

586. YANG at all relevant times exercised considerable authority over STORAGE INC. to the point of completely disregarding corporate form.

587. YANG at all relevant times acted as though STORAGE INC.'s assets were hers alone to manage and distribute.

588. YANG used her control over STORAGE INC. to divert business and assets from GREAT MARK and GREAT KINGSLAND in anticipation of impending legal liability to plaintiff.

589. YANG used her control over STORAGE INC. to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

590.     YANG dominated and controlled STORAGE INC. to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

591.     The plaintiff has been harmed by YANG's wrong doing.

## AS AND FOR A TWENTY-FOURTH CAUSE OF ACTION
### (Pierce the Corporate Veil of JOHNSON STORAGE INC. to attach liability to ZHAN)

592.     At The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "591" set forth above, as if more fully set forth herein.

593.     ZHAN, at all relevant times is the owner of STORAGE INC.

594.     ZHAN at all relevant times is an officer of STORAGE INC.

595.     ZHAN at all relevant times exercised considerable authority over STORAGE INC. to the point of completely disregarding corporate form.

596.     ZHAN at all relevant times acted as though STORAGE INC.'s assets were his alone to manage and distribute.

597.     ZHAN used her control over STORAGE INC. to divert business and assets from GREAT MARK and GREAT KINGSLAND in anticipation of impending legal liability to plaintiff.

598.     ZHAN used her control over STORAGE INC. to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

599.     ZHAN dominated and controlled STORAGE INC. to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

600.     The plaintiff has been harmed by ZHAN's wrong doing.

## AS AND FOR A  TWENTY-FIFTH CAUSE OF ACTION
**(Declaratory Judgment Zhan is the Equitable/ Putative Owner of JOHNSON STORAGE INC.)**

601.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "600" set forth above, as if more fully set forth herein.

602.    ZHAN acted as though the assets of STORAGE INC. were his alone to manage and distribute.

603.    ZHAN controlled and directed the activities of STORAGE INC.

604.    ZHAN's actions with respect to STORAGE INC.'s assets caused harm to the Plaintiff.

605.    Plaintiff is entitled to declaratory judgment that ZHAN was/is an owner of STORAGE INC.

606.    Plaintiff is entitled to declaratory judgment that ZHAN was/is an equitable/putative owner of STORAGE INC.

## AS AND FOR A  TWENTY-SIXTH CAUSE OF ACTION
**(Declaratory Judgment YANG is the Equitable/ Putative Owner of JOHNSON STORAGE INC.)**

607.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "606" set forth above, as if more fully set forth herein.

608.    YANG acted as though the assets of STORAGE INC. were hers alone to manage and distribute.

609.    YANG controlled and directed the activities of STORAGE INC.

610.    YANG's actions with respect to STORAGE INC.'s assets caused harm to the Plaintiff.

611. Plaintiff is entitled to declaratory judgment that YANG was/is an owner of STORAGE INC.

612. Plaintiff is entitled to declaratory judgment that YANG was/is an equitable/putative owner of STORAGE INC.

## AS AND FOR A TWENTY-SEVENTH CAUSE OF ACTION
### (Declaratory Judgment J & J and ZME is the Alter Ego/Successor/Mere Continuation of of Great Kingsland/ Johnson Storage)

613. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "612" set forth above, as if more fully set forth herein.

614. J & J and ZME and GREAT KINGSLAND and STORAGE had same office space.

615. J & J and ZME and GREAT KINGSLAND and STORAGE had the same an address.

616. J & J and ZME and GREAT KINGSLAND and STORAGE had the same employees and management.

617. J & J and ZME and GREAT KINGSLAND and STORAGE were in the same line of business.

618. J & J and ZME were created to frustrate and impede plaintiff from enforcing the judgment against GREAT KINGSLAND that was later obtained by plaintiff.

619. J & J and ZME were created to fraudulently convey, secret, waste, strip, and render judgment proof, GREAT KINGSLAND.

## AS AND FOR A TWENTY-EIGHTH CAUSE OF ACTION
### (Declaratory Judgment J & J and ZME is the Alter Ego/Successor/Mere Continuation of of STAR MARK and GREAT MARK)

620. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "619" set forth above, as if more fully set forth herein.

621.    J & J and ZME  and STAR MARK and GREAT MARK  had same office space.

622.    J & J and ZME  and STAR MARK and GREAT MARK  had the same an address.

623.    J & J and ZME  and STAR MARK and GREAT MARK  had the same employees and management.

624.     J & J and ZME  and STAR MARK and GREAT MARK  were in the same line of business.

625.    J & J and ZME  were created to frustrate and impede plaintiff from enforcing the judgment against STAR MARK and GREAT MARK  that was later obtained by plaintiff.

626.    J & J and ZME  were created to fraudulently convey, secret, waste, strip, and render judgment proof, STAR MARK and GREAT MARK .

### AS AND FOR A TWENTY-NINTH CAUSE OF ACTION
### (Pierce the Corporate Veil of BEAUTY LOVER EXPRESS, INC.)
### to attach liability to YANG)

627.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "626" set forth above, as if more fully set forth herein.

628.    BEAUTY LOVER does not have annual meetings of shareholders.

629.    BEAUTY LOVER does not elect officers.

630.    BEAUTY LOVER does not have meetings of officers.

631.    BEAUTY LOVER does not keep any corporate minutes.

632.    BEAUTY LOVER does not adhere to any corporate formalities.

633.    BEAUTY LOVER  does not issue stock.

634.    Zhan, at all relevant times is the owner of BEAUTY LOVER

635.    YANG at all relevant times is an officer of  BEAUTY LOVER

636.    YANG at all relevant times exercised considerable authority over BEAUTY LOVER to the point of completely disregarding corporate form.

637.    YANG at all relevant times acted as though its assets were hers alone to manage and distribute.

638.    YANG used her control over BEAUTY LOVER to divert business and assets from GREAT MARK and GREAT KINGSLAND in anticipation of impending legal liability to plaintiff.

639.    YANG used her control over BEAUTY LOVER to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

640.    YANG dominated and controlled BEAUTY LOVER to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

641.    The plaintiff has been harmed by YANG's wrong doing.

### AS AND FOR A  THIRTIETH CAUSE OF ACTION
### (Pierce the Corporate Veil of BEAUTY LOVER EXPRESS, INC. to attach liability to ZHAN)

642. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "641" set forth above, as if more fully set forth herein.

ZHAN, at all relevant times is the owner of BEAUTY LOVER

643. ZHAN at all relevant times is an officer of  BEAUTY LOVER

644. ZHAN at all relevant times exercised considerable authority over BEAUTY LOVER to the point of completely disregarding corporate form.

645. ZHAN at all relevant times acted as though its assets were his alone to manage and distribute.

646.  ZHAN used his control ove BEAUTY LOVER to fraudulently secret, strip, divert business and assets from GREAT MARK and GREAT KINGSLAND in anticipation of impending legal liability to plaintiff.

647.  ZHAN used his control over BEAUTY LOVER to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against STAR MARK- the predecessor in interest of GREAT KINGSLAND.

648.  ZHAN used his control over BEAUTY LOVER to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

649.  ZHAN dominated and controlled BEAUTY LOVE  to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

650.  The plaintiff has been harmed by ZHAN's wrong doing.


### AS AND FOR A THIRTY- FIRST CAUSE OF ACTION
**(Declaratory Judgment Zhan is the Equitable/ Putative Owner of BEAUTY LOVER EXPRESS, INC.)**

651.  The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "651" set forth above, as if more fully set forth herein.

652.  ZHAN acted as though the assets of BEAUTY LOVER were his alone to manage and distribute.

653.  ZHAN controlled and directed the activities of BEAUTY LOVER.

654.  ZHAN's actions with respect to BEAUTY LOVER's assets caused harm to the Plaintiff.

655.  Plaintiff is entitled to declaratory judgment that ZHAN was/is an owner of BEAUTY LOVER.

656.  Plaintiff is entitled to declaratory judgment that ZHAN was/is an equitable/putative owner of BEAUTY LOVER.

## AS AND FOR A  THIRTY-SECOND CAUSE OF ACTION
### (Declaratory Judgment YANG is the Equitable/ Putative Owner of BEAUTY LOVER EXPRESS, INC.)

657.  The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "656" set forth above, as if more fully set forth herein.

658.  YANG acted as though the assets of BEAUTY LOVER were hers alone to manage and distribute.

659.  YANG controlled and directed the activities of BEAUTY LOVER.

660.  YANG actions with respect to BEAUTY LOVER's assets caused harm to the Plaintiff.

661.  Plaintiff is entitled to declaratory judgment that YANG was/is an owner of BEAUTY LOVER.

662.  Plaintiff is entitled to declaratory judgment that YANG was/is an equitable/putative owner of BEAUTY LOVER.

## AS AND FOR A THIRTY- THIRD CAUSE OF ACTION
### (Order of Attachment Office Condo YANG)

663.  The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "662" set forth above, as if more fully set forth herein.

664.  Plaintiff has a claim for money damages over and against YANG.

665.  Plaintiff has a likelihood of success on the merits of its claims against YANG.

666.  YANG with intent to defraud her creditors or frustrate enforcement of the judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted

property, removed it from state, or is about to do any of these acts, which warrant an order of attachment.

667. YANG and ZHAN have disposed of STAR MARK. assets and good will to GREAT KINGSLAND with the intent to defraud creditor-plaintiff and frustrate enforcement of the judgment that might be rendered in plaintiff's favor.

668. YANG and ZHAN have assigned STAR MARK. assets and good will to GREAT KINGSLAND with intent to defraud creditor-plaintiff and frustrate enforcement of the judgment that might be rendered in plaintiff's favor.

669. YANG and ZHAN have disposed of GREAT MARK's assets and good will to GREAT KINGSLAND, G.K EXOTIC, and EZ FANTASY with the intent to defraud creditor-plaintiff or frustrate enforcement of the judgment that might be rendered in plaintiff's favor.

670. YANG and ZHAN have assigned, transferred and otherwise conveyes GREAT MARK's assets and good will to GREAT KINGSLAND, G.K EXOTIC, and EZ FANTASY with intent to defraud creditor-plaintiff amd frustrate enforcement of the judgment that might be rendered in plaintiff's favor.

671.  The amount demanded from defendant-YANG is greater than amount of all counterclaims known to plaintiff.

672.  Plaintiff is entitled to an Order of Attachment of the Office Condo owned by YANG known as: 33-70 Prince Street, Unit CA28, Queens County, City and State of New York, 11354, known on the tax maps as Queens Block 4946, Lot 1127 (Entire Lot) CA28.


**AS AND FOR A  THIRTY-FOURTH CAUSE OF ACTION**
**(Pierce the Corporate Veil of ZME . to attach liability to E ZHAN)**

673. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "672" set forth above, as if more fully set forth herein. ZHAN, at all relevant times is the owner of ZME.

674. E ZHAN at all relevant times is an officer of ZME.

675. E ZHAN at all relevant times exercised considerable authority over ZME to the point of completely disregarding corporate form.

676. E ZHAN at all relevant times acted as though its assets were his alone to manage and distribute.

677. E ZHAN used his control ove ZME to fraudulently secret, strip, divert business and assets from GREAT MARK and GREAT KINGSLAND and ZHAN in anticipation of impending legal liability to plaintiff.

678. E ZHAN used his control over ZME.to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against STAR MARK- the predecessor in interest of GREAT KINGSLAND.

679. E ZHAN used his control over ZME.to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

680. E ZHAN dominated and controlled ZME to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

681. The plaintiff has been harmed by E ZHAN's wrong doing.

682. E ZHAN knew that the debtor defendants owed money to plaintiff.

683. E ZHAN knew that YANG and ZHAN were transferring assets between companies to frustrate the plaintiff's ability to collect on its judgment.

684.    E ZHAN aided and abetted the wrong doing of ZHAN and YANG as and agains the plaintiff.

685.    The plaintiff has been harmed by  E ZHAN's wrong doing.

## AS AND FOR A  THIRTY-FIFTH CAUSE OF ACTION
### (Pierce the Corporate Veil of ZME AND J & J . to attach liability to YANG and.or ZHAN)

621.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "685" set forth above, as if more fully set forth herein. ZHAN, at all relevant times is the owner of ZME.

622.    ZHAN at all relevant times exercised considerable authority over ZME  and J & J to the point of completely disregarding corporate form.

623.    ZHAN at all relevant times acted as though its assets were his alone to manage and distribute.

624.     ZHAN used his control ove ZME and J & J to fraudulently secret, strip, divert business and assets from GREAT MARK and GREAT KINGSLAND and ZHAN in anticipation of impending legal liability to plaintiff.

625.    ZHAN used his control over ZME nd J & J to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against STAR MARK- the predecessor in interest of GREAT KINGSLAND.

626.    ZHAN used his control over ZME and J & J to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

627.    ZHAN dominated and controlled ZME and J & J  to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

628.     YANG at all relevant times exercised considerable authority over ZME  and J & J to the point of completely disregarding corporate form.

629.     YANG at all relevant times acted as though its assets were her alone to manage and distribute.

630.     YANG used her control ove ZME and J & J to fraudulently secret, strip, divert business and assets from GREAT MARK and GREAT KINGSLAND and ZHAN in anticipation of impending legal liability to plaintiff.

631.     YANG used her control over ZME nd J & J to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against STAR MARK- the predecessor in interest of GREAT KINGSLAND.

632.     YANG used her control over ZME and J & J to frustrate and impede plaintiff's ability to collect the judgment that it would obtain over and against the judgment debtor defendants.

633.     YANG dominated and controlled ZME and J & J  to fraudulently convey, secret, waste, strip, and render judgment proof, the judgment debtor defendants.

634.     Plantiff has beeb harmed by YANG and ZHAN's conduct.


WHEREFORE, Plaintiff hereby demands judgment over and against the Defendants, as follows:

I.     As and for the First Cause of Action Declaratory Judgment that Great Kingsland is Successor/Mere Continuation Company of Star Mark Management Inc., and is therefore liable

for the Judgment entered on January 8, 2010 in the amount of $989,426.13 plus interest, arising out of litigation under E.D.N.Y. Case No.: 04-CV-2993 (SMG).

   II.      As and for the Second Cause of Action(Declaratory Judgment G.K Exotic, Inc. is the Alter Ego/Successor/Mere Continuation of Great Mark Corp. and is therefore liable for the Judgment entered on January 8, 2010 in the amount of $989,426.13 plus interest, arising out of litgation under E.D.N.Y. Case No.: 04-CV-2993 (SMG).

   III.     As and for the Third Cause of Action Declaratory Judgment G.K Exotic, Inc. is the Alter Ego/Successor/Mere Continuation of of Great Kingsland Inc. and is therefore liable for the Judgment entered on January 8, 2010 in the amount of $989,426.13 plus interest, arising out of litgation under E.D.N.Y. Case No.: 04-CV-2993 (SMG).

   IV.     As and for the Fourth Cause of Action Declaratory Judgment EZ Fantasy, Inc. is the Alter Ego/Successor/Mere Continuation of of Great Mark Corp. and is therefore liable for the Judgment entered on January 8, 2010 in the amount of $989,426.13 plus interest, arising out of litgation under E.D.N.Y. Case No.: 04-CV-2993 (SMG).

   V.      As and for the Fifth Cause of Action Declaratory Judgment EZ Fantasy, Inc. is the Alter Ego/Successor/Mere Continuation of of G.K Exotic, Inc. and is therefore liable for the Judgment entered on January 8, 2010 in the amount of $989,426.13 plus interest, arising out of litgation under E.D.N.Y. Case No.: 04-CV-2993 (SMG).

   VI.     As and for the Sixth Cause of Action Declaratory Judgment that  EZ Fantas, Inc. is the Alter Ego/Successor/Mere Continuation of of Great Kingsland, Inc. and is therefore liable for the Judgment entered on January 8, 2010 in the amount of $989,426.13 plus interest, arising out of litgation under E.D.N.Y. Case No.: 04-CV-2993 (SMG).

VII.       As and for the Seventh Cause of Action of Piercing the Corporate Veil of Great Kingsland, Inc. to attach liability to Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao, a money judgment over and against Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao, in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

VIII.      As and for the Eighth Cause of Action of Pierce the Corporate Veil of Great Kingsland, Inc. to attach liability to Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan, a money judgment over and against Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

 IX.       As and for the Ninth Cause of Action Declaratory Judgment that Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  is the Owner/ Equitable/ Putative Owner of of Great Kingsland, Inc.

 X.        As and for the Tenth Cause of Action Declaratory Judgment that Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao is the Owner/ Equitable/ Putative Owner of of Great Kingsland, Inc.

 XI.       As and for the Eleventh Cause of Action Pierce the Corporate Veil of Great Mark Corp. to attach liability to Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan, a money judgment over and against Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

 XII.      As and for the Twelfth Cause of Action Pierce the Corporate Veil of Great Mark Corp. to attach liability to Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao, a money

judgment over and against Jessica Yang a/k/a Yang Xiao Geng a/k/a Jessica Qiao in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XIII.        As and for the Thirteenth Cause of Action Declaratory Judgment that Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  is the Equitable/ Putative Owner of Great Mark Corp.

XIV.        As and for the Fourteenth Cause of Action Declaratory Judgment that Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao is the Equitable/ Putative Owner of Great Mark Corp.

XV.        As and for the Fifteenth Cause of Action Pierce the Corporate Veil of G.K Exotic, Inc.  to attach liability to Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao, a money judgment over and against Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XVI.        As and for the Sixteenth Cause of Action Pierce the Corporate Veil of G.K Exotic, Inc. to attach liability to Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan, a money judgment over and against Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XVII.        As and for the Seventeenth Cause of Action Declaratory Judgment that Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  is the Equitable/ Putative Owner of G.K Exotic, Inc.

XVIII.        As and for the Eighteenth Cause of Action Declaratory Judgment that Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao is the Equitable/ Putative Owner of G.K Exotic, Inc.

XIX.        As and for the Nineteenth Cause of Action of Piercing the Corporate Veil of EZ Fantasy, Inc. to attach liability to Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao, a money

judgment over and against Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XX.       As and for the Twentieth Cause of Action of Piercing the Corporate Veil of EZ Fantasy, Inc. to attach liability to Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan, a money judgment over and against Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XXI.       As and for the Twenty- First Cause of Action Declaratory Judgment that Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  is the Equitable/ Putative Owner of EZ Fantasy, Inc.

XXII.       As and for the Twenty-Second Cause of Action Declaratory Judgment that Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao is the Equitable/ Putative Owner of EZ Fantasy, Inc.

XXIII.       As and for the Twenty-Third Cause of Action Piercing the Corporate Veil of Johnson Storage Inc.  to attach liability to Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao, a money judgment over and against Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XXIV.       As and for the Twenty- Fourth Cause of Action Piercing the Corporate Veil of Johnson Storage Inc.  to attach liability to Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan, a money judgment over and against Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XXV.        As and for the Twenty-Fifth of Action Declaratory Judgment that Yi Q. Zhan a/k/a

Yi Qiang Zhan a/k/a Jimmy Zhan, is the Equitable/ Putative Owner of Johnson Storage Inc.

XXVI.        As and for the Twenty-Sixth of Action, Declaratory Judgment that Jessica Yang

a/k/a Yang Xiao Geng a/k/a  Jessica Qiao is the Equitable/ Putative Owner of Johnson Storage Inc.

XXVII.        As and for the Twenty-Seventh Cause of Action Declaratory Judgment J & J and

ZME  is the Alter Ego/Successor/Mere Continuation of of Great Kingsland/ Johnson Storage.

XXVIII.        As and for the Twenty-Eighth  Cause of Action Declaratory Judgment

Declaratory Judgment J & J and ZME  is the Alter Ego/Successor/Mere Continuation of of

STAR MARK and GREAT MARK.


XXIX.        As and for the Twenty-Ninth Cause of Action Piercing the Corporate Veil of Beauty

Lover Express, Inc. to attach liability to Jessica Yanf a/k/a Yanf Xiao Geng a/k/a  Jessica Qiao, a

money judgment over and against Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao in an

amount to be determined at trial but not expected to be less than one million, seven hundred and

ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XXX.        As and for the Thirtieth Cause of Action Piercing the Corporate Veil of Beauty

Lover Express, Inc. to attach liability to Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,, a

money judgment over and against Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan,  in an

amount to be determined at trial but not expected to be less than one million, seven hundred and

ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XXXI.        As and for the Thirty-First Cause of Action Declaratory Judgment that co-defendant

Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan, is the Equitable/ Putative Owner of Beauty

Lover Express, Inc.

XXXII.      As and for the Thirty- Second Cause of Action Declaratory Judgment that co-defendant Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao is the Equitable/ Putative Owner of Beauty Lover Express, Inc.

XXXIII.      As and for the Thirty-Third  Cause of Action an Order of Attachment over and against the Office Condominium located at: 33-70 Prince Street, Unit CA28, Queens County, City and State of New York, 11354, known on the tax maps as Queens Block 4946, Lot 1127 (Entire Lot) CA28.

XXXIV.      As and for the Thirty-Fourth Cause of Action Piercing the Corporate Veil of  ZME Galaxy Corp, to attach liability to Edmund Zhan, as well as, adding and abeting fraudulent conveyances of Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao and/or Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan, a money judgment over and against Edmund Zhan,  in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XXXV.      As and for the Thirty-Fifth Cause of Action Piercing the Corporate Veil of  ZME Galaxy Corp, to attach liability to Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao and/or Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan, a money judgment over and against, Jessica Yang a/k/a Yang Xiao Geng a/k/a  Jessica Qiao and/or Yi Q. Zhan a/k/a Yi Qiang Zhan a/k/a Jimmy Zhan  in an amount to be determined at trial but not expected to be less than one million, seven hundred and ninety-thousand, eight hundred and sixty-one dollars ($1,790,861.31) and thirty-one cents.

XXXVI.        Along with such For such other and further relief that this Court deems just,

necessary and proper, including legal fees and costs

DATED : New York, New York
                March 25, 2020

Respectfully Submitted,

**LAW OFFICES OF PETER SVERD, PLLC**

By. _____
                PETER SVERD, ESQ.
                (PS0406)
                *Attorneys for Plaintiff*
                225 Broadway, Ste. 613
                New York, NY 10007
                PH:     (646) 751-8743
                Psverd@sverdlawfirm.com