UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

KOON CHUN HING KEE SOY & SAUCE FACTORY, LTD,

                           Plaintiff,

v.

                                                   Case No.: 1:19-cv-02026(FB) (CLP)

JESSICA YANG a/k/a YANG XIAO GENG a/k/a
JESSICA QIAO, YI Q. ZHAN a/k/a YI QIANG ZHAN
 a/k/a JIMMY ZHAN, STAR MARK MANAGEMENT, INC.,
GREAT MARK CORPORATION, GREAT KINGSLAND,
INC., G.K EXOTIC, INC., EZ FANTASY, INC.,
BEAUTY LOVER EXPRESS, INC.
JOHNSON STORAGE, INC.,  ZME GALAXY CORP., J & J
GLOBAL USA, INC.,  and EDMUND ZHAN,

                            Defendants.

-------------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Law Offices of Peter Sverd, PLLC
225 Broadway, Suite 613
New York, New York 10007
(646) 751-8743
psverd@sverdlawfirm.com

**Of Counsel:**
Peter Sverd, Esq.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………...1

BRIEF STATEMENT OF ARGUMENT…………………………………………………..1

POINT I.  THE CORPORATE VEILS OF STAR MARK MANAGEMENT, INC., GREAT MARK CORPORATION, GREAT KINGSLAND, INC., G.K EXOTIC, INC., EZ FANTASY, INC., JOHNSON STORAGE, INC.,  ZME GALAXY CORP., AND J & J GLOBAL USA, INC. SHOULD ALL BE PIERCED TO ATTACH LIABILITY TO ITS SUCCESSOR AND ALTER EGO,  AND TO ATTACH LIABILITY TO YANG PERSONALLY…………………………………………………………………….…2

A.      THE LEGAL STANDARD: VEIL PIERCING………………………….....……..2-4

B.  ACTUAL FRAUD: DEBTOR CREDITOR LAW § 276………………………..…………4-5

1.      PIERCE THE CORPORATE VEIL OF GREAT KINGSLAND AND ATTACH LIABILITY TO YANG ,THE SOLE OWNER OF STAR MARK, WHO "DENUDED" AND "STRIPPED" STAR MARK OF ALL OF ITS ASSETS AND TRANSFERRED THEM TO GREAT KINGSLAND RENDERING STAR MARK UNABLE TO SATISFY THE KOON CHUN JUDGMENT  …………………………………………………….…..5-6

2.      Declaratory Judgment that GK EXOTIC is the successor to GREAT MARK and that judgment in the amount of $989,426.13, plus interest from January 8, 2010, and attorneys fees and costs……………………………………………………………………………….6-7

3.      Piercing The Corporate Veil Of J&J GLOBAL, as a Successor in Interest of Kingsland International, and Great Mark and GK Exotic To Attach Liability To Its Owner YANG ………7-8

4.       Piercing The Corporate Veil Of  ZME, To Attach Liability To Its Owner YANG In The Amount Of $190,728.30 That ZME Paid To Madison Realty Corp. That It Had No Contractual Obligation To Pay For, Plus Attorneys Fees And Costs………………………………….…8-9

POINT II. CONSTRUCTIVE FRAUDULENT CONVEYANCES VIOLATIONS UNDER THE DEBTOR/CREDITOR LAW…………………….…………………………………………..9-10

A.      CONSTRUCTIVE FRAUD ALLEGATIONS: DEBTOR CREDITOR LAW SECTIONS 273, 274, 275……………………….………………………...………………………10

B.      YANG,  GREAT KINGSLAND, JOHNSON STORAGE, AND GK EXOTIC MADE PREFERENTIAL TRANSFERS  AND DEBTOR CREDITOR LAW §272 CANNOT BE USED AS A SHIELD TO THE CONSTRUCTIVE FRAUDULENT CONVEYANCES …...10-11
.
1.      Monies Taken By YANG, or for Her Benefit, And Transfers Between the Defendant Corporations were Preferential; Were *Per Se* Not Made In Good Faith, and As A Matter of Law Lacked Fair Consideration………………………………………………………11-12

2.      Transfers Resulted in Corporate Assets Going Directly to A Corporate
Insider or An Entity Controlled By a Corporate Insider Are Preferential………………………12-14

C.      YANG,  GREAT KINGSLAND, JOHNSON STORAGE, AND GK EXOTIC
VIOLATED DEBTOR CREDITOR LAW § 274…………………………………………………..14

D.      YANG,  GREAT KINGSLAND, JOHNSON STORAGE, AND GK EXOTIC
VIOLATED DEBTOR CREDITOR LAW §273 …………………………………………………..14

a.  The conveyances out of the Corporate Defendants were not made in good faith ……………15
b. The Corporate Defendants were not solvent at the time that the conveyances were made…15-16


CONCLUSION……………………………………………………………………...………………16

**TABLE OF AUTHORITIES**

AIU Ins. Co. v. Robert Plan Corp., 17 Misc.3d 1104 (A), 851 N.Y.S.2d 56 (N.Y.Sup. 2007)……5

American Federated Title Corp. V. GFI Management, 126 F. Supp.3d 388, 401-406.
 (SDNY 2015)……………………………………..……………………………………………4,6

American Investment Bank, N.A. v. Marine Midland Bank, N.A., 191 A.D.2d 690,
595 N.Y.S.2d 537 (2d Dept. 1993)……………………………………………..………………11

American Patel Tec v. Hyrise, Inc., 31 A.D.3d 586, 819 N.Y.S.2d 768 (2d Dept.
2006)…………………………………………………………………………………………….11

Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 249 (2d Cir.1987)………………..……12

Berner Trucking v. Brown, 281 A.D.2d 924, 722 N.Y.S.2d 656 (4th Dept. 2001)………………..12

Dempster v. Overview Equities, Inc., 4 A.D.3d 495, 773 N.Y.S.2d 71 (2d Dept. 2004)…………..5

Ede v. Ede,  193 A.D.2d 940, 598 N.Y.S.2d 90 (3d Dept. 1993). ………………………..…………..16

Farm Stores, Inc. v. Sch. Feeding Corp., 102 A.D.2d 249, 477 N.Y.S.2d 374, 378
(2d Dep't 1984)……………………………………………………………………...11, 13

First Keystone Consultants, Inc. v. Schlesinger Electrical Contractors, 871 F.Supp.2d 103,
 117 (E.D.N.Y. 2012)……………………………………………………………………..10, 15

Gateway I Group, Inc. v Park Ave. Physicians, P.C., 62 A.D.3d 141, 145, 877 N.Y.S.2d 95
(2d. Dept. 2009)……………………………………………………………………..…3

HBE Leasing Corp. v. Frank, 48 F.3d 623, 634 (2d Cir.1995)…………………………..……11, 12

Hickland v. Hickland, 100 A.D.2d 643, 472 N.Y.S.2d 951 (3rd Dept. 1984). ………………………11

In re Morra, 2009 WL 2226124 (E.D.N.Y., Bktrpt. 2009)……………………………………………15

In re Nirvana Restaurant Inc., 337 B.R. 495, 506 (S.D.N.Y.B.R 2006)……………………………15

In re Sharp Intern Cop. 403 F.3d 43 (2d Cir. 2004)……………………………………………………10

Laco X-Ray Systems, Inc. v. Fingerhut, 88A.D.2d 425, 453 N.Y.S.2d 757,
appeal dismissed, 58 N.Y.2d 606, 460 N.Y.S.26 1026, 447 N.E.2d 86 (2d Dept. 1982)……..…….7,11

Matter of Mogil v. Building Essentials, Inc., 129 A.D.3d 1378, 12 N.Y.S.3d 346
(3d. Dept. 2015)………………………………………………...…………………………………12

Matter of Superior Leather Co. v. Lipman Split Co., 116 A.D.2d 796, 496 N.Y.S.2d 845
 (3rd Dept. 1986)……………………………………………………………………………….……..13

McCarthy v. Estate of McCarthy, __ F. Supp.3d __, 2015 WL 7019768 (S.D.N.Y. 2015)………15

Mega Personal Lines, Inc. v. Halton, 9 A.D.3d 553, 555, 780 N.Y.S.2d 409, 411
(3rd Dept. 2004)………………………………………………...…………………………………..13
Moody v. Sec. Pac. Bus. Credit, Inc., 971 F.2d 1056 (3d Cir. 1992)………………….…………...15

Northpark Associates, L.P. v. S.H.C. Mergers, Inc., 8 A.D.3d 642, 779 N.Y.S.2d 549
 (2d Dept. 2004)……………………………………………………………………….……………..13

NPR, LLC v. Met Fin. Mgmt., Inc. 63 A.D.3d 1128(2d Dept. 2009)………………..…………….4

Pen Pak v. LaSalle Nat. Bank of Chicago, 240 A.D.2d 384 (2d Dept. 1997)………..…………….5

Steinberg v. Levine, 6 A.D.3d 620, 774 N.Y.S.2d 810 (2d Dept. 2004)……………..……………..5

St. Teresa's Nursing Home v. Vuksanovich, 268 A.D.2d 421, 702 N.Y.S.2d 92 (2d Dept. 2000). …14

United States of America v. Coppola, 1994 WL 665751 (E.D.N.Y. 1994)………………...…..…..12

Webmediabrands, Inc. v. Latinvision, Inc., 46 Misc.3d 929, 3 N.Y.S.3d 262
(Sup. Ct. N.Y. Cty. 2014)……………………………………………………………….…………..3

Williams v. Lovell Safety Management Co., LLC, 71 A.D.3d 671, 896 N.Y.S.2d 150
(2d Dept. 2010)………………………………………………………………………………..3

5706 Fifth Avenue, LLC v. Louzieh, 108 A.D.3d 589, 969 N.Y.S.2d 141 (2d Dept. 2013)………………………………………………………………………….……..4

## PRELIMINARY STATEMENT

This Memorandum of Law is being submitted along with the October 25, 2021 Statement of Unrefuted Facts, the Attorney Confidential Declaration of Peter Sverd, Esq., dated October 25, 2021, with exhibits attached thereto, the Attorney Declaration of Peter Sverd, Esq, dated October 25, 2021, with exhibits attached thereto, along with the Affidavit of Raymond Chan, dated October 25, 2021, in support of the Plaintiff- Koon Chun Hing Kee Soy & Sauce Factory, Ltd.'s motion for summary judgment.

## BRIEF STATEMENT OF ARGUMENT

There is no genuine dispute that the upon execution of the Ex Parte Seizure Order on June 13, 2004, YANG and ZHAN, and by extension, each and every corporate defendant in this action, had actual knowledge of Koon Chun's unmatured claims against STAR MARK, and GREAT MARK and YANG the sole shareholder of STAR MARK. On December 29, 2004, Koon Chun was granted leave to interpose its amended complaint to add ZHAN as a direct party defendant, thereby giving YANG and ZHAN actual notice that Koon Chun had an unmatured claim against ZHAN. On May 1, 2009, Judge Gold awarded judgment to Koon Chun over and against STAR MARK, GREAT MARK, and ZHAN. YANG, ZHAN, and each and every corporate defendant in this action had actual knowledge of Koon Chun's claim. On January 8, 2010, Judgment was entered in the Office of The Court, against STAR MARK, GREAT MARK, and ZHAN in the amount of $989,426.13.

At all times since June 13, 2004, the Defendants' intentionally engaged in a series of activities designed to frustrate Koon Chun's ability to collect on its judgment. There is no genuine issue of fact that YANG and ZHAN dominated and controlled the corporate defendants to denude them of assets, to enrich themselves, and to hinder and endlessly delay Koon Chun's collection on the debt owed to it by STAR MARK, GREAT MARK, and ZHAN. There is no genuine dispute

that YANG, individually, and through the companies that she controlled, was an active participant in denuding, frustrating and hindering Koon Chun's collection efforts, while enriching herself.

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

<u>**THE CORPORATE VEILS OF STAR MARK MANAGEMENT, INC.,
GREAT MARK CORPORATION, GREAT KINGSLAND, INC., G.K EXOTIC, INC., EZ
FANTASY, INC., JOHNSON STORAGE, INC., ZME GALAXY CORP., AND J & J
GLOBAL USA, INC. SHOULD ALL BE PIERCED TO ATTACH LIABILITY TO ITS
SUCCESSOR AND ALTER EGO,
AND TO ATTACH LIABILITY TO YANG PERSONALLY.**</u>

The unrefuted facts clearly demonstrate that Star Mark, Great Mark, Great Kingsland, G.K Exotic., EZ Fantasy, Johnson Storage, Inc., ZME and J & J, failed to adhere to corporate formalities, were both inadequately capitalized and commingled assets, Yang and Zhan took corporate funds for their own purpose, there was a substantial overlap in ownership and personnel between the Corporations, which shared common office space and equipment, none of the Corporate Defendants transacted any business at arms-length. Since 2004 not a single Corporate Defendant was and independent profit center, moneys from each was transferred into the other for no other purpose than to enrich YANG and ZHAN, or to make preferential payments to YANG and/or ZHAN that rendered the Debtor Defendants, and the successor Corporate Defendants depleted of all of its assets.

**A.**

<u>**THE LEGAL STANDARD: VEIL PIERCING**</u>

Common law veil piercing can be achieved by satisfying the common law elements or by establishing actual fraudulent conveyance in violation of Debtor Creditor Law § 276. These two legal doctrine are at issue in this litigation and the law governing these areas are stated, herein. The corporate veil will be pierced to achieve equity, even absent fraud, [w]hen a corporation has been

so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego. See, Williams v. Lovell Safety Management Co., LLC, 71 A.D.3d 671, 896 N.Y.S.2d 150 (2d Dept. 2010). The Second Department set for the doctrine of veil piercing in Gateway I Group, Inc. v Park Ave. Physicians, P.C., 62 A.D.3d 141, 145, 877 N.Y.S.2d 95 (2d. Dept. 2009). The Court stated that:

> "A party seeking to pierce the corporate veil must establish that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury. (internal citations omitted). The party seeking to pierce the corporate veil must establish that the controlling corporation or individuals "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene" (*internal citations omitted*).
>
> Indicia of a situation warranting veil-piercing include: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own. (*internal citations omitted).*"

The Court in Webmediabrands, Inc. v. Latinvision, Inc., 46 Misc.3d 929, 3 N.Y.S.3d 262 (Sup. Ct. N.Y. Cty. 2014) pierced the corporate veil relying in part on the doctrine that the failure to create loan documents with respect to money deposited into a corporate account, and treatment of corporate accounts as "though they were [defendant's] personal funds that he could remove at will," were indicative of abuse of the corporate form. The Court also noted that overlapping of

owners and directors, used same domain name, held no meetings, and kept no corporate records, further warranted summary judgment piercing the corporate veil.

District Court Judge Wood in <u>American Federated Title Corp. V. GFI Management</u>, 126 F. Supp.3d 388, 401-406. (SDNY 2015) sets forth the relationship between New York's veil-piercing doctrine and actual fraudulent conveyances under the Debtor Creditor Law Sec. 276, in a plain way, which merits recitation.

"[V]eil-piercing actions premised on the intentional stripping of corporate assets are closely related to actually fraudulent conveyance claims under DCL Se. 276. When a controlling party "denude[s] the [corporation] of its assets in order to render it unable to honor its obligations" <u>Rebh</u>, 252 A.D.2d at 611,675 N.Y.S.2d 234, the controlling party necessarily makes conveyances to "hinder, delay, or defraud with present or future creditors," DCL Sec 276. Thus a successful veil-piercing action premised on asset stripping proves actually fraudulent conveyances under DCL Sec 276, and a successful under DCL sec 276 usually establishes wrongdoing (although perhaps not control or causation) sufficient to justify veil-piercing <u>See eg.</u> <u>NPR, LLC v. Met Fin.</u> <u>Mgmt., Inc.</u> 63 A.D.3d 1128(2d Dept. 2009)(affirming holding that deemed actually fraudulent conveyances under DCP Sec 276 a sufficient basis for veil piercing)."

## B.

## <u>ACTUAL FRAUD: DEBTOR CREDITOR LAW § 276</u>

The Appellate Division, Second Department in <u>5706 Fifth Avenue, LLC v. Louzieh</u>, 108 A.D.3d 589, 969 N.Y.S.2d 141 (2d Dept. 2013), pronounced that:

> "[p]ursuant to Debtor and Creditor Law § 276, '[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.' "(<u>Matter of U.S. Bancorp Equip. Fin., Inc. v. Rubashkin</u>, 98 A.D.3d 1057, 1060, 950 N.Y.S.2d 767; <u>See</u>

> Pen Pak Corp. v. LaSalle Nat'l Bank of Chicago, 240 A.D.2d 384, 386, 658 N.Y.S.2d 407). Direct evidence of fraudulent intent is often elusive. Therefore, courts will consider 'badges of fraud,' which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent. (internal citations omitted). A plaintiff that successfully establishes actual intent to defraud is entitled to a reasonable attorney's fee under Debtor and Creditor Law § 276–a. See Ford v. Martino, 281 A.D.2d 587, 588, 722 N.Y.S.2d 574)"

The list circumstantial factors do not represent a list of elements that all must be satisfied, rather they comprise a general list of circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent. See generally, AIU Ins. Co. v. Robert Plan Corp., 17 Misc.3d 1104 (A), 851 N.Y.S.2d 56 (N.Y.Sup. 2007)(The "badges of fraud" may include: a close relationship…(emphasis supplied). "Badges of fraud, which may be considered as evidence in a fraudulent conveyance action, include (1) the close relationship among the parties to the transaction, (2) the inadequacy of consideration, (3) the transferor's knowledge of the creditor's claims, or claims so likely to arise as to be certain, and the transferor's inability to pay them, and (4) the retention of control of property by the transferor after the conveyance. See Dempster v. Overview Equities, Inc., 4 A.D.3d 495, 773 N.Y.S.2d 71 (2d Dept. 2004); See Pen Pak v. LaSalle Nat. Bank of Chicago, 240 A.D.2d 384 (2d Dept. 1997); See Steinberg v. Levine, 6 A.3d 620, 774 N.Y.S.2d 810 (2d Dept. 2004).


1.   **PIERCE THE CORPORATE VEIL OF GREAT KINGSLAND AND ATTACH LIABILITY TO YANG ,THE SOLE OWNER OF STAR MARK, WHO "DENUDED" AND "STRIPPED" STAR MARK OF ALL OF ITS ASSETS AND TRANSFERRED THEM TO GREAT KINGSLAND RENDERING STAR MARK UNABLE TO SATISFY THE KOON CHUN JUDGMENT**

Yang was the sole owner of STAR MARK. **P Exh. 38, BNP 6, 19**. YANG completely dominated and controlled judgment-debtor STAR MARK, when she 'denuded' and 'stripped' STAR MARK of all of its assets- transferring them all to GREAT KINGSLAND (**P. Exh 23**

**transcript p. 8.**) in order to render STAR MARK judgment proof in the face of Koon Chun's, then pending lawsuit. <u>See</u> <u>American Federated Title Corp. V. GFI Management</u>, 126 F. Supp.3d 388, 401-406. (SDNY 2015)(Wood, J.), who provides:

> "Although courts have pierced the corporate veil based upon a variety of deceitful or unjust acts, one type of culpable conduct recurs with particular frequency: a controlling party intentionally renders a corporation judgment-proof in order to avoid paying obligations to the corporation's creditors. In some cases, the controlling party creates a judgment proof "dummy" corporation as a means to incur, but ultimately avoid paying, personal obligations (citations and discussion omitted).… In other cases, the controlling party strips the assets from the previously legitimate corporation in order to avoid satisfying preexisting obligations that the corporation incurred in the ordinary course of business. <u>See, e.g.,</u> <u>Matter of Arbitration between Holborn Oil Trading Ltd. & Interpol Bermuda Ltd.</u>, 774 F. Supp. 840, 847 (SDNY 1991)(Leisure, J.)("It is clear that proof of a stripping of assets of the subsidiary by the parent, motivated by a desire to render the subsidiary judgment proof, would constitute a 'fraud or wrong' justifying piercing the corporate veil."); <u>Rebh v. Rotterdam Ventures Inc.</u>, 252 a.D.2d 609, 675 N.Y.S.2d 234 (3d Dept. 1998)(recognizing that a controlling party's "scheme to denude [a corporation] of its assets in order to render it unable to honor its obligations" would justify piercing the corporate veil.")…."

Koon Chun is entitled to summary judgment against YANG in the sum of $989,426.13, plus interest from January 8, 2010, and attorneys fees and costs, for stripping STAR MARK of all of its assets and rendering the judgment debtor judgment proof.

**2.    Declaratory Judgment that GK EXOTIC is the successor to GREAT MARK and that judgment in the amount of $989,426.13, plus interest from January 8, 2010, and attorneys fees and costs.**

Zhan was an owner of judgment-debtor GREAT MARK and an Officer of the Corporation. **P Exh 35 BNP BR 7, 14,  21, 26; See Confidential Submission at BNP 96.** GREAT MARK was in the business of selling adult products and CDS' and DVD's (**P Exh 40, BNP 606. ll. 17-19),** importing, exporting, and wholesaling food products **(P Exh. 24, BNP 114)** and  conducted a mail order business of selling high-tech merchandise. **P Exh. 24, BNP 116-117.**    GREAT

MARK also made payments to Madison Realty for the 136-15 41st Avenue, Flushing New York 11354. **P Exh 27 BNP 2**. GREAT MARK used the 1101 Metropolitan Avenue warehouse for the food products that it bought and sold, and for its mail order business. **P Exh 24, BNP 115, 116.**

In 2006, during the course of prior Koon Chun lawsuit, GK EXOTIC was formed with YANG as its sole owner. **P Exh. 4; BNP 38. P Exh. 24, BNP 54-55; P Exh 35 BNP BR 53, 63, 70.** Zhan served as Treasurer **P Exh 4, BNP 38.1, 38.2, 38.3, 38.4, 38.6.** GK EXOTIC was in the business of selling adult toys and merchandise. **P Exh 24, BNP 66; 134; P Exh. 28 BNP 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 18—51, 57.** GK EXOTIC made payments to Madison Realty, the landlord of 136-15 41st Avenue, Flushing, New York 11354, as well. **P Exh 27, BNP 5-7, 10**.

The Second Department holds that: "Where officer, director and stockholder of original corporation and successor corporation was an active participant in transfer of assets from the former to the latter, and was aware that creditor had outstanding claim against the former, which was left as an empty shell, the individual, who was the ultimate transferee of the corporate assets of the original corporation, with knowledge of the diversion, was liable as a constructive trustee." See Laco X-Ray Systems, Inc. v. Fingerhut, 88A.D.2d 425, 453 N.Y.S.2d 757, appeal dismissed, 58 N.Y.2d 606, 460 N.Y.S.26 1026, 447 N.E.2d 86 (2d Dept. 1982).

At bar, YANG knew of Koon Chun's claims when GK EXOTIC took over the adult toy business from GREAT MARK. YANG is responsible for the diversion as a constructive trustee, and the judgment against GREAT MARK must be pinned on her in the sum of **$989,426.13**, plus interest from January 8, 2010.

**3. Piercing The Corporate Veil Of J&J GLOBAL, as a Successor in Interest of Kingsland International, and Great Mark and GK Exotic To Attach Liability To Its Owner YANG**

J & J GLOBAL was incorporated on 10/29/2007 **P Exh. 4, BNP 96**. YANG is the sole 100% owner of the issued and outstanding shares J & J (**P Exh. 24, BNP 66**) and served as its president. **P Exh. 4, BNP 98**. J & J received rent from the sub-tenant of 136-15 41st Avenue on February 18, 2014, and March 18, 2014. **P Exh 32, pdf P 13, 14**.

J &J made payments to Madison Realty, totaling $184,346.50 from August 2011 to May 2016, despite having no legal obligation to do so. J&J made these payments on behalf of, and instead of Kingsland International, Zhan's company that had a written lease agreement with Madison Realty dated April 17, 2000. **P Exh. 20**. Kingsland International changed its name to GREAT MARK in 2001 or 2002. **P Exh. 23, transcript p. 72 (pdf p. 17)**, and GREAT MARK had a greater legal obligation to pay rent to Madison Realty, then did J&J.

There is no genuine dispute that YANG dominated and controlled J&J GLOBAL which carried on, and profited from the business obligations of Kingsland International and GREAT MARK, and GK EXOTIC, while leaving these entities judgment proof and stripped of all assets. This fraud and collusion requires that the corporate veil of J &J be pierced to attach liability to YANG in the sum of $184,346.56 that J&J GLOBAL plus interest and attorneys fees and costs.

**4.     Piercing The Corporate Veil Of ZME, To Attach Liability To Its Owner YANG In The Amount Of $190,728.30 That ZME Paid To Madison Realty Corp. That It Had No Contractual Obligation To Pay For, Plus Attorneys Fees And Costs.**

ZME was incorporated on February 18, 2014. **P Exh. 4, BNP 45.** YANG and ZHAN each owned 100 shares of ZME for the year 2017, 2016 , 2015, and 2014 (**P EXH 37, BNP 55, 101, 144, 180**), and as of September 22, 2014, ZHAN is the owner of 30% of the issued and outstanding shares in ZME (**P Exh. 4, BNP 40**) and YANG owns 70% of the shares of ZME. **P EXH 37, BNP 8.**

ZME took over for collection of rental income from third-parties for the retail premises at 136-15 4st Avenue, Flushing, New York, from July 18, 2016 (**P Exh. 32 BNP 55.38**) through July 20, 2019. **P Exh 32, BNP 293; BNP 70, 80, 88, 90, 94, 102, 106, 112-115, 118, 124-127, 136-139, 147, 151, in passim through 643.** ZME GALAXY also took over Kingsland International, and GREAT MARK'S responsibility to make lease payments to Madison Realty, which ZME volunteered a total of $178,308.30 in payments.

There is no genuine dispute that YANG dominated and controlled ZME which carried on, and profited from the business obligations of Kingsland International and GREAT MARK, and GK EXOTIC, while leaving these entities judgment proof and stripped of all assets. This fraud and collusion requires that the corporate veil of ZME to be pierced to attach liability to YANG in the sum of $178,308.30 that ZME diverted, plus interest and attorneys fees and costs.

## POINT II

## <u>CONSTRUCTIVE FRAUDULENT CONVEYANCES VIOLATIONS UNDER THE DEBTOR/CREDITOR LAW</u>

There is no genuine dispute that Yang violated Debtor Creditor Law §§'s 273, 274, and 275, and Koon Chun is entitled to judgment over and against Yang in the sum of: a) $260,939.80 for money GREAT KINGSLAND paid to the mortgage and Credit Line Mortgage against Yang and Zhan's home; b)(i) $101.71 that GREAT KINGSLAND paid to Flushing Tower Condo on Yang's behalf, (ii) $116,388 that GREAT KINGSLAND paid to Yang; c) $9,500 for money GREAT MARK paid to the Yang; d) $49,500 for money JOHNSON STORAGE paid to Yang; e) $13,052.84 for money that YANG caused GK EXOTIC to pay to Madison Realty on behalf of Kingsland International; f) $178,308.30 that YANG caused ZME to pay the Madison Realty on behalf of Kingsland International; g) $184,346.56 that YANG caused J&J GLOBAL to pay to

the Madison Realty on behalf of Kingsland International; h) $9,500 for money GK EXOTIC paid to Yang; i) $17,541.00 for money that YANG caused GK EXOTIC to be paid to ZME.

## A.

## CONSTRUCTIVE FRAUD ALLEGATIONS: DEBTOR CREDITOR LAW SECTIONS 273, 274, 275

Pursuant to the NYDCL, a conveyance by a debtor is deemed constructively fraudulent if it is made without fair consideration and if one of the following conditions is met: (1) the conveyor is insolvent or will be rendered insolvent by the conveyance in question, (NYDCL § 273); (2) the conveyor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital (NYDCL § 274); or (4) the conveyor believes that it will incur debts beyond its ability to pay (NYDCL § 275)  None of these sections of the NYDCL requires the plaintiff to show that the defendant acted with actual intent to defraud. See, First Keystone Consultants, Inc. v. Schlesinger Electrical Contractors, 871 F.Supp.2d 103, 117 (E.D.N.Y. 2012).

## A.

## YANG,  GREAT KINGSLAND, JOHNSON STORAGE, AND GK EXOTIC MADE PREFERENTIAL TRANSFERS  AND DEBTOR CREDITOR LAW §272 CANNOT BE USED AS A SHIELD TO THE CONSTRUCTIVE FRAUDULENT CONVEYANCES

Where the transferee is an officer, director, or major shareholder of the transferor, the satisfaction of a preexisting debt does not qualify as fair consideration for a transfer of property under the New York Uniform Fraudulent Conveyance Act (UFCA). See In re Sharp Intern Cop. 403 F.3d 43 (2d Cir. 2004). "Although satisfaction of a preexisting debt generally constitutes fair consideration, (internal citation omitted) courts recognize an exception to this rule where the transferee is an officer, director, or major shareholder of the transferor. Under New York law, "[p]references to a debtor corporation's shareholders, officers, or directors are deemed not to be

transfers for fair consideration." <u>HBE Leasing Corp. v. Frank</u>, 48 F.3d 623, 634 (2d Cir.1995); <u>see also</u> <u>Laco X–Ray Sys., Inc. v. Fingerhut</u>, 88 A.D.2d 425, 453 N.Y.S.2d 757, 762 (2d Dep't 1982) (finding fair consideration lacking when assets of corporation "were conveyed in such a manner that its principals ... became preferred creditors to the detriment of other creditors"); <u>Farm Stores, Inc. v. Sch. Feeding Corp.</u>, 102 A.D.2d 249, 477 N.Y.S.2d 374, 378 (2d Dep't 1984) ("[P]referential transfers to directors, officers and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the good-faith requirement of the Debtor and Creditor Law.")." <u>See</u>, <u>First Keystone Consultants, Inc. v. Schlesinger Electrical Contractors</u>, 871 F.Supp.2d 103, 117-118 (E.D.N.Y. 2012).

When a debtor makes a transfer without fair consideration, the debtor's insolvency will be presumed. <u>See First Keystone Consultants, Inc. v. Schlesinger Electrical Contractors</u>, 871 F.Supp.2d 103, 119-121 (E.D.N.Y. 2012)(<u>citing</u>, <u>Laco X-Ray Systems, Inc. v. Fingerhut</u>, 88A.D.2d 425, 453 N.Y.S.2d 757, appeal dismissed, 58 N.Y.2d 606, 460 N.Y.S.26 1026, 447 N.E.2d 86 (2d Dept. 1982) and <u>Farm Stores v. School Feeding Corp.</u>, 102 A.D.2d 249, 249, 477 N.Y.S.2d 374 (2d. Dept. 1984)); <u>See</u> <u>American Investment Bank, N.A. v. Marine Midland Bank, N.A.</u>, 191 A.D.2d 690, 595 N.Y.S.2d 537 (2d Dept. 1993); <u>See</u>, <u>Hickland v. Hickland</u>, 100 A.D.2d 643, 472 N.Y.S.2d 951 (3rd Dept. 1984).

1. **Monies Taken By YANG, or for Her Benefit, And Transfers Between the Defendant Corporations were Preferential; Were *Per Se* Not Made In Good Faith, and As A Matter of Law Lacked Fair Consideration.**

"The good faith of both the transferor and transferee is an indispensable element of fair consideration (internal citations omitted), and preferential transfers of corporate funds to directors, officers, and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the requirement of good faith." <u>See</u>, <u>American Patel Tec v. Hyrise</u>, Inc., 31 A.D.3d

586, 819 N.Y.S.2d 768 (2d Dept. 2006)(citing, Matter of P.A. Bldg. Co. v. Silverman, 298 A.D.2d 327, 750 N.Y.S.2d 13 (1st Dept. 2002); Berner Trucking v. Brown, 281 A.D.2d 924, 722 N.Y.S.2d 656 (4th Dept. 2001);  Sullivan & Sons v. Superior Dry Wall Sys. Corp., 109 A.D.2d 836, 486 N.Y.S.2d 360(2d Dept. 1985); Farm Stores v. School Feeding Corp., 102 A.D.2d 249, 477 N.Y.S.2d 374 (2d. Dept. 1984), affd. 64 N.Y.2d 1065, 489 N.Y.S.2d 877, 479 N.E.2d 222 (1985); (See Also,   United States of America v. Coppola,  1994  WL  665751  (E.D.N.Y. 1994)("[P]referential transfers to directors, officers and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the good-faith requirement of the Debtor and Creditor Law." citing, Farm Stores, Inc. v. School Feeding Corp., 102 A.D.2d 249, 254, 477 N.Y.S.2d 374, 378 (2d. Dept. 1984), aff'd, 64 N.Y.2d 1065, 489 N.Y.S.2d 877, 479 N.E.2d 222 (1985)); Daelim Trading Co., Ltd. v. Giagni Enterprises, LLC. Et al. 2014 WL 6646233(citing) In Re Centennial Textiles, Inc., 220 B.R. 165, 172 (Bankr.S.D.N.Y.1998); Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 249 (2d Cir.1987)(Under New York law, "transfers from an insolvent corporation to an officer, director or major shareholder of that corporation are per se violative of the good faith requirement (of DCL § 272).")). See also, HBE Leasing Corp. v. Frank, 48 F.3d 623, 634 (2nd Cir. 1995) ("New York courts have carved out one exception to the rule that preferential payments of pre-existing obligations are not fraudulent conveyances: preferences to a debtor corporation's shareholders, officers, or directors are deemed not to be transfers for fair consideration.").

### 2. Transfers Resulted in Corporate Assets Going Directly to A Corporate Insider or An Entity Controlled By a Corporate Insider Are Preferential

The Courts hold that transfers resulting in a corporation's assets which go to an entity controlled by a corporate insider is not a transfer made in good faith. See Matter of Mogil v. Building Essentials, Inc., 129 A.D.3d 1378, 12 N.Y.S.3d 346 (3d. Dept. 2015); See also, Mega

Personal Lines, Inc. v. Halton, 9 A.D.3d 553, 555, 780 N.Y.S.2d 409, 411 (3rd Dept. 2004) ("When the insider is the transferee or controls the transferee, there can be no factual dispute that the purpose of the transfer was to confer on the insider a preference over other creditors." (citing, Matter of Superior Leather Co. v. Lipman Split Co., 116 A.D.2d 796, 496 N.Y.S.2d 845 (3rd Dept. 1986)(overruling the trial court holding that questions of fact existed as to whether Gregory was a Mega Group (corp. transferee) insider with an ownership interest in MPL at the time of the transfer. The Court affirmed the trial court's statement of the law: "[w]hile we agree with Supreme Court's premise that the transfer of corporate assets to an insider establishes a lack of good faith as a matter of law, we note that the principle requires the transfer of assets either directly to the insider or to an entity controlled by the insider."(all internal citations omitted except, Farm Stores School Feeding Corp.)). Intercorporate shuffling of assets and debts for the purposes of rendering uncollectable a money judgment signals a lack of requisite good faith DCL § 272. See Matter of Superior Leather Co. v. Lipman Split Co., 116 A.D.2d 796, 496 N.Y.S.2d 845 (3rd Dept. 1986).

The Second Department denied motions for summary judgment reasoning that questions of fact existed as to whether the transfer at issue was made in good faith (DCL §272) given its timing and the status of Westcon as the parent corporation and sole shareholder of SHC. See, Northpark Associates, L.P. v. S.H.C. Mergers, Inc., 8 A.D.3d 642, 779 N.Y.S.2d 549 (2d Dept. 2004) (emphasis added)(citing, REBH v. Rotterdam, 252 A.D.2d 609, 675 N.Y.S.2d 234 (3rd Dept. 1998)p; c.f., Farm Stores v. School Feeding Corp.

There is no genuine dispute that each of complained of transfers were "preferred transfers" as a matter of law, and judgment should be entered over and against YANG in the sum of: $260,939.80 for money GREAT KINGSLAND paid to the mortgage and Credit Line Mortgage against Yang and Zhan's home;  b) (i)$101.71 that GREAT KINGSLAND paid to Flushing Tower

Condo on Yang's behalf, ( ii) $116,388 that GREAT KINGSLAND paid to Yang; c) $9,500 for money GREAT MARK paid to the Yang; d) $49,500 for money JOHNSON STORAGE paid to Yang; e) $13,052.84 for money that GK EXOTIC paid to the Madison Realty on behalf of Kingsland International; f) $178,308.30 that YANG caused ZME to pay to Madison Realty on behalf of Kingsland International; g) $184,346.56 that YANG caused J&J GLOBAL to pay to Madison Realty on behalf of Kingsland International; h) $9,500 for money GK EXOTIC paid to Yang; i) and the sum of $17,541.00 for money that YANG caused GK EXOTIC paid to ZME.

## 1. DEBTOR CREDITOR LAW § 274

Section 274 of the Debtor Creditor Law, entitled conveyances by persons in businesses, provides:

> "Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."

## 2. DEBTOR CREDITOR LAW § 273

Pursuant to Debtor and Creditor Law § 273, a conveyance made by a person who will thereby be rendered insolvent thereby is fraudulent as to creditors without regard to his or her actual intent if the conveyance was made without fair consideration.  See St. Teresa's Nursing Home v. Vuksanovich, 268 A.D.2d 421, 702 N.Y.S.2d 92 (2d Dept. 2000).

### a.  The conveyances out of the Corporate Defendants were not made in good faith

As is detailed above 'preferential' transfers are not, as a matter of law, made in good faith.

### b. The Corporate Defendants were not solvent at the time that the conveyances were made.

A party is insolvent under the Debtor Creditor law when the fair salable value of its assets is less than the amount that will be required to pay its probable liability on existing debts as they become absolute and matured. See D.C.L. §271 (1). New York Courts employ the "balance sheet" test in deciding whether a debtor was solvent at time of the alleged constructive fraudulent transfer. "For the purpose of insolvency under the New York DCL "fair salable value" is determined in the going concern context, 'by the fair market value of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts.'" See In re Nirvana Restaurant Inc., 337 B.R. 495, 506 (S.D.N.Y.B.R 2006)(internal citations omitted). Under New York's constructive fraudulent transfer law, in assessing the debtor's solvency at the time of the challenged transfer, the court should disregard assets that cannot be sold. Id., citing, Moody v. Sec. Pac. Bus. Credit, Inc., 971 F.2d 1056 (3d Cir. 1992).

To be 'salable' an asset must have 'an existing and not theoretical market.' Id; See also, Chen v. New Trend Apparel, Inc. 8 F. Supp.3d 406 (S.D.N.Y. 2014). "[o]nly assets with a present salable value are taken into consideration in determining insolvency. Claims that are inchoate, uncertain, and contested have no present value and cannot be considered an asset of the [transferor]." See McCarthy v. Estate of McCarthy, __ F. Supp.3d __, 2015 WL 7019768 (S.D.N.Y. 2015); See also, First Keystone Consultants, Inc. v. Schlesinger Electrical Contractors, 871 F.Supp.2d 103, 119-121 (E.D.N.Y. 2012).

The Court in In re Morra, 2009 WL 2226124 (E.D.N.Y., Bktrpt. 2009)(unreported decision)) held that a debtor's "interest in anticipated future income from a regular source," is not a salable asset, as the prospect of earning future income cannot be considered an asset having "salable value." The Court reasoned that where the debtor is an employee at will, subject to termination or layoff with or without cause, is an interest inchoate, uncertain and contingent in

nature, and therefore lacks a present fair salable value for DCL purposes. See Ede v. Ede, 193 A.D.2d 940, 598 N.Y.S.2d 90 (3d Dept. 1993).

Accordingly, the rental incomes that the Defendant Corporations received from third-parties who leased space at 1101 Metropolitan Avenue, Brooklyn, NY 11211, 136-15 41st Avenue, Flushing, New York 11354, or 3842 Review Avenue, Long Island City, New York are not salable assets under the Code, and the Defendant Corporations were rendered insolvent at the time each and every complained of transaction was made.

## **CONCLUSION**

WHEREFORE, it is respectfully submitted that the Plaintiff's motion should be granted in all respects.

Dated: New York, New York
      October 25, 2021

                                         _____
                                          PETER SVERD, ESQ.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email

on October 26, 2021 at 12:45 am
to:

T. Bryce Jones, Esq.
Principal, Jones Law Firm, P.C.
450 Seventh Avenue, Suite 1408
New York, NY 10123
bryce@joneslawnyc.com
*Attorneys for Defendants Jessica
Yang, Yi Q. Zhan, Star Mark*
Management, Inc., Great Mark
Corporation, Great Kingsland Inc.,
*EZ Fantasy, Inc., Johnson Storage
Inc., and Edmund Zhan*


Dated: New York, New York
October 25, 2021

By:_____
Peter Sverd, Esq. (0406)
THE LAW OFFICES OF PETER SVERD, PLLC
225 Broadway, Suite 613
New York, NY 10007
(646) 751-8743
Attorneys for Plaintiff Koon Chun